Koninklijke Lederfabriek "Oisterwijk" N. V., Plaintiff, *v.* The Chase National Bank of the City of New York, Defendant.*

Supreme Court, Special Term, New York County, September 26, 1941.

---

* Affd., 263 App. Div. 815.

*Hays, St. John, Abramson & Schulman* [*Arthur Garfield Hays, John Schulman* and *Oscar Stabiner* of counsel], for the plaintiff.

*Milbank, Tweed & Hope,* for the defendant.

*Sullivan & Cromwell* [*Allen W. Dulles* and *Henry P. De Vries* of counsel], for the State of the Netherlands, *amicus curiæ.*

*Larkin, Rathbone & Perry* [*Francis S. Bensel* of counsel], for the Central Hanover Bank and Trust Company.

*Chadbourne, Wallace, Parke & Whiteside* [*Leonard P. Moore* and *James N. Buckner* of counsel], for The Commercial National Bank and Trust Company.

WALTER, J. This apparently simple motion for leave to serve a notice of the pendency of the action has given rise to questions of unusual importance. The action is at law to recover money deposited with defendant by a Netherlands corporation. In anticipation of the German invasion the Netherlands Parliament enacted a law authorizing Netherlands corporations to change their " seat " (which apparently means more than principal office and seems to be substantially in the nature of domicile) from the territory of the Netherlands in Europe to other Netherlands territory, and defendant's depositor took the prescribed steps for effecting such change. Some of its officers, asserted to be its principal stockholders, also made their way out of Netherlands territory in Europe. Other of its officers remained therein. After the German invasion, and after the Netherlands government had fled to London, that government, which is the Netherlands government recognized as such by the United States, made a decree which by its terms purports to make null and void any claim or instruction or advice emanating from occupied territory of the Netherlands respecting assets of Netherlands corporations outside such territory. The German Commissioner for the occupied Netherlands territory later purported to suspend, or deny the

effect of, both that law and that decree, and from the occupied territory defendant has received various written instructions and directions, the substance of which is that no valid change of " seat " of its depositor has been effected, that the authority of the officers who made their way out of Netherlands territory in Europe has been duly terminated by due corporate action, and that certain other designated persons in the occupied territory have sole power and authority over the money on deposit with defendant. A further notice received by defendant from the occupied territory states that one Huppertz, described as " fiduciary " of defendant's depositor " appointed as such by order of March 6, 1941, of the Commissioner of the Reich for the occupied territory of the Netherlands," is by virtue of a decree of said Commissioner solely entitled to " sign " for said " firm," the authority of persons otherwise authorized to represent the company having been suspended " during the period of the fiduciary management," but that until further notice such " fiduciary " authorizes certain named persons to " represent the company."

Because of the notices so received defendant makes this motion for leave to serve the notice of pendency of the action which is prescribed in section 51-a of the Civil Practice Act. Plaintiff opposes the motion and is supported in its opposition by the Minister of the State of the Netherlands to the government of the United States, who appears by private counsel acting as *amicus curiæ*. In support of the opposition there is pointed out, what seems to be fairly obvious, that a holding that such notices as defendant has received constitute a " claim " within the meaning of section 51-a would make it possible for the German occupying authorities, not only of the Netherlands but also of other occupied countries, to block all the very substantial deposits in this State of all persons and corporations in all occupied countries. Nothing would be easier, it is said, than for the German invaders to coerce persons in the occupied territories into serving such notices, and it also is asserted that the power so to block such deposits also may be used to coerce persons outside the occupied territories into taking action desired by the invader. Still further, it is pointed out that while section 51-a provides for a stay of only one year after the notice of pendency therein provided for has been given, some other " claim " may be asserted within the year, and thus successive stays may result. Unquestionably, the consequences of granting the motion may be serious. Defendant on the other hand urges that the consequences of a denial may be serious to it. The court's function, however, is not that of enunciating policies but the humbler one of reading and applying a statute, although

of course consequences may be envisaged as a check upon the validity of the reading because " the thought behind the phrase proclaims itself misread when the outcome of the reading is injustice or absurdity." (*Surace* v. *Danna*, 248 N. Y. 18, 21.)

Defendant cites *Krafft* v. *S. S. Steiner, Inc.* (N. Y. L. J. Nov. 18, 1939, p. 1694) as holding that under section 51-a the granting of the requested order is mandatory. Plaintiff cites *Anninger* v. *Hohenberg* (172 Misc. 1046) as holding that the merits of the asserted claim may be examined. I think neither case justifies either view. The truth, as usual, lies between the two extremes, and the cases cited are consistent with a golden mean.

Section 51-a was enacted because interpleader, as applied to a mere debt, has been declared to be *in personam*, and hence not capable of supporting service of process outside the State (*Hanna* v. *Stedman*, 230 N. Y. 326, 335; *Devoy* v. *Nelles*, 197 App. Div. 628) — a declaration which I venture to think very well might be re-examined in the light of repeated adjudications that a debt has a situs at the home of the debtor. The device adopted is a short Statute of Limitations operative from the time notice of the pendency of an action is given, but as protection from hazard is the end sought, there is no reason for supposing that there was any intent to require less of a showing of hazard when application is made under section 51-a than when either equitable or statutory interpleader is invoked. On the contrary, as interpleader results in all claimants being immediately brought in and a prompt determination made, while notice under section 51-a results in the suing claimant being stayed for at least a year, considerations of convenience and justice indicate that the necessity for a showing of hazard is even greater upon applications under section 51-a than upon applications for leave to interplead.

The application provided for in section 51-a is for an order permitting the defendant to serve a notice of pendency, and if it had been intended that permission must be granted merely because asked, there was little sense in requiring that any application at all be made. The requirement for an application to the court plainly means that the court is to exercise at least some measure of judgment and discretion, and the provision that the court " must grant " the application is qualified by the limiting phrase " where it appears that a person not a party to the action has made claim against the defendant " and " said claimant cannot, with due diligence, be personally served with process within this State." The application consequently is not to be granted unless there be a claimant other than the plaintiff in the action and a claim other than that asserted by such plaintiff. The court is not to determine

the merits of the claim asserted by such other claimant. Neither disputed questions of fact nor debatable questions of law are to be decided. The very object of giving the notice is to bring the other claimant before the court so that such questions may be decided after hearing him. But I regard it as equally obvious that it must be made to appear that there are disputed questions of fact or debatable questions of law to be decided. More than the mere words " I claim " is requisite. There must be facts showing that some one who could sue in our courts asserts something which, if proved to be true, would be recognized by our courts as an enforcible cause of action, for the hazard against which the defendant is to be protected is the hazard of double liability and not the hazard of the inconvenience and expense of defending a baseless lawsuit.

There doubtless have been times when *Pouch* v. *Prudential Ins. Co.* (204 N. Y. 281) has been too rigidly applied, and also times when it has been misunderstood. It is there expressly stated that it is not necessary to show that the claimant will probably succeed, *i. e.*, it is not necessary to show probable merit; and I think it plain that the other statement there made that it is necessary to show that the alleged claim of the third person has " some reasonable basis on which to rest " refers to the nature of the third party's assertions as constituting something which the law recognizes as a demand legally enforcible. In other words, an assertion of something of such nature that it may be regarded as an enforcible demand is a " claim " even though it may be found upon a trial to be lacking in merit, but an assertion of something of such nature that it cannot constitute an enforcible demand, or a mere assertion not shown to be of such nature that it can constitute an enforcible demand, does not arise to the dignity of a " claim."

If it be said that the difference between determining whether an assertion can constitute an enforcible demand and determining whether an assertion is legally meritorious is merely a difference of degree, it is sufficient to answer that, as so often pointed out by Mr. Justice Holmes, most distinctions in the law are distinctions of degree. The difference here is at least as well marked as that appearing in the rule applicable to motions for summary judgment, viz., that the court is not to try an issue but merely to determine whether or not there is an issue to try.

Under these principles I proceed to a consideration of the notices which defendant has received other than the one from the so-called " fiduciary," leaving that one for separate consideration later on. As to those I think it plain that they do not constitute " claims " within the meaning of section 51-a. There is not in any of them any suggestion that any one other than defendant's depositor is

entitled to the money deposited. They, therefore, do not show a claimant other than the plaintiff in this action. They do not make it appear — using the precise language of section 51-a — that " a person not a party to the action has made claim against the defendant for the said sum of money." They show, to be sure, conflicting assertions as to what individuals are authorized to act on behalf of defendant's depositor and make demands on its behalf, but that presents no more than a question of agency such as defendant is called upon to decide every time a check of a corporate depositor is presented to it. The fact that the question of agency here may be complex rather than simple, and may involve the determination and application of foreign law, does not convert the case into one of two claimants.

Upon the trial plaintiff of course will have to prove its allegation that it is defendant's depositor, precisely as every plaintiff must prove his title if put to his proof, and defendant no doubt is entirely justified in here demanding such proof, but I think it never before has been asserted that a dispute as to what individuals are authorized to act for a corporation presents a case for interpleader when a debt due that corporation is sought to be recovered. The situation here is totally different from the cases cited by defendant in which a question was presented as to whether title to the debt or fund sued for was in one executor or another, or in one public official or his successor, or in one corporation or another.

Turning now to the notice emanating from the " fiduciary," it is to be observed that in it there is no suggestion of a transfer of title to the deposit to him. The " fiduciary " merely asserts an authority to act for defendant's depositor, and there is even lacking any clear indication of even an intent that such authority should have extraterritorial effect, i. e., effect outside the occupied territory of the Netherlands in Europe. But even if the order of the Reich Commissioner mentioned in the notice were one which attempted to transfer title to the " fiduciary," such title could have no force or effect here except such as New York chooses to allow. The effect to be given to the order within this State is determined by the law of this State. (*Moscow Fire Ins. Co.* v. *Bank of New York*, 280 N. Y. 286, 303; *Read* v. *Lehigh Valley R. R. Co.*, 284 id. 435, 444.) New York ordinarily allows the holder of a title acquired under foreign law to come here and enforce it (*Mabon* v. *Ongley Electric Co.*, 156 N. Y. 196; *Stone* v. *Penn Yan, K. P. & B. Railway*, 197 id. 279; *Union Guardian Trust Co.* v. *Broadway Nat. Bank*, 138 Misc. 16), just as it ordinarily permits enforcement here of foreign-made contracts and foreign-arising tort claims (*Loucks* v. *Standard Oil Co.*, 224 N. Y. 99), but because foreign law has no force

or effect in New York it necessarily follows that neither foreign-acquired titles nor foreign-made contracts nor foreign-arising tort claims can be recognized or enforced here except in so far as our law permits their recognition and enforcement. (Cases last cited and *Compania de Inversiones Internacionales* v. *Industrial Mortgage Bank of Finland*, 269 N. Y. 22, 31, 32; *Straus & Co.* v. *Canadian Pacific R. Co.*, 254 id. 407, 414; *Edgerly* v. *Bush*, 81 id. 199, 204; *Willitts* v. *Waite*, 25 id. 577, 582, 585–587; *Matter of Waite*, 99 id. 433, 448; *Marshall* v. *Sherman*, 148 id. 9, 24, 25.) That is true even with respect to titles acquired, contracts made, and torts arising under the law of regularly recognized *de jure* governments, and within limits imposed by the " full faith and credit " clause of the Constitution of the United States it is true as to those acquired or made or arising under the law of sister States. (Cases last cited and cases cited by STONE, J., in *United States* v. *Belmont*, 301 U. S. 324, 334.) *A fortiori* is it true where, as here, the assumed title of the " fiduciary " has no better basis than an order of a Commissioner of an invading force which has not been recognized by our State Department as the lawful existing government in the territory in question (*Sokoloff* v. *National City Bank*, 239 N. Y. 158; *James & Co.* v. *Second Russian Ins. Co.*, Id. 248; *Petrogradsky M. K. Bank* v. *National City Bank*, 253 id. 23, 28), and a reading of the many cases involving decrees of the Russian Soviet government leaves me with no doubt that the law of New York does not give to the order of the Reich Commissioner set forth in this record the effect of vesting the " fiduciary " with any title to the money deposited with defendant.

A Soviet decree nationalizing banks followed by a seizure of the bank's assets and an appropriation of deposits was held not to have the effect here of divesting the depositor's title or discharging the liability to him of a New York bank which did business in Russia (*Sokoloff* v. *National City Bank, supra*) even where the deposit was made in Russia by a Russian corporation the existence of which the decree attempted to terminate. (*Petrogradsky M. K. Bank* v. *National City Bank, supra*.) There was a like holding where the deposit was made in New York with a New York bank by a Russian corporation the property of which the Soviet decree had appropriated to the Soviet government. (*Vladikavkazsky R. Co.* v. *New York Trust Co.*, 263 N. Y. 369.) A Soviet decree nationalizing insurance companies and releasing them from their liabilities was held not to have the effect here of divesting the right of the assignee of a British corporation to recover upon a contract of insurance made with a Russian corporation, even though Great Britain recognized the Soviet government before the assignment

was made. (*James & Co.* v. *Second Russian Ins. Co., supra.*) Assets deposited here with the Superintendent of Insurance by Russian insurance companies were held to be subject to the claims of foreign as well as domestic creditors and the surplus after paying creditors was held to be payable to the companies, or to their directors, even though Soviet decrees had undertaken to appropriate the assets of those companies. (See the history of such holdings traced in *United States* v. *Bank of New York & Trust Co.*, 296 U. S. 463; *Moscow Fire Ins. Co.* v. *Bank of New York, supra.*)

Defendant argues that it is at least conceivable that recognition ultimately may be accorded to the present *de facto* government of Netherlands territory in Europe by Germany, and it points to the fact that the ultimate recognition of the Soviet government of Russia was followed by the spectacle of the United States itself asserting claims based upon Soviet decrees which for years had been regarded as abhorrent to our policy and laws and ideas of decency and justice. (See *United States* v. *Belmont, supra; Guaranty Trust Co.* v. *United States*, 304 U. S. 126; *Moscow Fire Ins. Co.* v. *Bank of New York, supra; United States* v. *Pink*, 284 N. Y. 555.) Because of the possibility of such recognition it says it should not be left defenseless to meet claims that may be asserted if and when recognition comes. That is tantamount to saying that matters should remain *in statu quo* for an indefinite period until a government recognized by the United States shall function in the territory of the Netherlands in Europe, and it thus appears to be in substance the very contention which was rejected in *Matter of People (Russian Reinsurance Co.)* (255 N. Y. 415, 421). Apart from that, however, the doctrine that recognition is retroactive in effect and validates previous acts is applied only to a limited extent. (*Guaranty Trust Co.* v. *United States, supra,* 140.) Recognition does not undo the legal consequences of previous recognitions, and if plaintiff here recover a judgment based upon our government's present recognition of the Netherlands government now functioning in London, that judgment will be conclusive as against a claim based upon a later recognition of a successor government. (*Guaranty Trust Co.* v. *United States, supra,* 140, 141.) Still further, it is to be noted that even after our government recognized the Soviet government of Russia the United States, as assignee of the rights of the Soviet government, was denied recovery upon the ground that the decrees of the Soviet government did not affect property in New York. (*Moscow Fire Ins. Co.* v. *Bank of New York, supra; United States* v. *Pink, supra.*)

I conclude, therefore, that under the law of New York the order of the Reich Commissioner neither gives the "fiduciary" a title to the money deposited with defendant nor divests the title of defendant's depositor thereto. Such "fiduciary" consequently is not a "claimant" within the meaning of section 51-a.

The motion is accordingly denied.

The conclusion thus reached makes it unnecessary to consider whether or not there can be applied to a national bank the provisions of chapter 150 of the Laws of 1941, effective March 24, 1941, by which section 134 of the Banking Law is amended so as to provide, in general, that a bank or trust company need not recognize or give effect to claims, advices, statutes, rules or regulations emanating from territory dominated by authority not recognized by the United States as the *de jure* government of such territory. Whether technically applicable or not, that enactment certainly is a strong legislative declaration recognizing and confirming what I have found to be the law of New York as expressed in decisions of its courts, the applicability of which to national banks located in this State cannot be doubted.

Reference should also be made to Executive Order No. 8389 made by the President of the United States on April 10, 1940, and to the extensions thereof to the Netherlands and other countries, and to the act of Congress of May 7, 1940 (54 U. S. Stat. at Large, 179; U. S. Code, tit. 12, § 95a), which would seem to establish a law or policy of the United States which prohibits and renders invalid any attempt to defeat or impair the title of defendant's depositor to the deposit here sued for, but as counsel have not argued that phase of the matter the court does not make it a ground of decision.