AMSTELBANK, N. V., a Corporation, Plaintiff, *v.* GUARANTY TRUST COMPANY OF NEW YORK, Defendant.

Supreme Court, Special Term, New York County, November 28, 1941.

*Couderi Brothers* [*Lewis A. R. Innerarity* of counsel], for the plaintiff.

*Sullivan & Cromwell* [*Allen W. Dulles* and *Henry P. DeVries* of counsel], for the State of the Netherlands, *amicus curiæ.*

*Davis, Polk, Wardwell, Gardiner & Reed,* for the defendant.

PECORA, J. Defendant moves for an order, pursuant to section 51-a of the Civil Practice Act, permitting it to give notice of the pendency of this action " to Amstelbank in Holland through Dr. Foltinek as Beheerder thereof, as an adverse claimant to the moneys claimed in the complaint."

Plaintiff is a banking corporation organized many years ago and existing under the laws of the Netherlands. Some time in 1932 plaintiff opened a deposit account with defendant which it has maintained continuously since that time. The present action was brought to recover the balance due on that account.

Section 51-a of the Civil Practice Act provides that no action for the recovery of money payable under contract shall be commenced by any person, who has made claim thereto, after the expiration of one year from the giving of notice to said claimant that an action commenced by another person is pending to recover such money. It is further provided that if any person shall make claim for the recovery of money payable under contract, and an action has been commenced by another person to recover such money, the defendant may apply to the court for an order permitting the defendant to give notice to the said claimant that such action is pending. Upon such application the court must grant such order where it appears that a person not a party to the action has made claim against the defendant for the said sum of money and cannot be personally served within this State. Defendant avers such a claim has been received by it.

To support that assertion defendant relies mainly upon the receipt of a cablegram by it on December 24, 1940, dated at Vienna, Austria, on December 24, 1940, which reads as follows: " In my capacity as Beheerder for Amstelbank, Amsterdam, appointed by Commissioner General of Finances and Economics for the Netherlands, and duly entered in Commercial register, I notify you that I am the only person authorized to represent and sign for Amstelbank Stop Any other authority is hereby cancelled. (Signed) Dr. Foltinek, Beheerder." In addition to the cablegram defendant calls attention to a letter it received on August 19, 1941, from " Amstelbank, N. V.," and dated June 25, 1941. That letter, however, in my opinion, lends support only cumulatively to defendant's contention that it is confronted with a claim by one not presently a party to this action to the fund in suit.

The determination of this motion involves the consideration of two questions: (1) Whether a " claim " has been advanced by one not a party to this action, and (2) whether any such " claim " is of the nature referred to in section 51-a of the Civil Practice Act.

On April 26, 1940, when the Kingdom of the Netherlands was faced with the threat of a German invasion, various protective measures were passed, one of which became effective on May 8, 1940, just two days before the actual invasion took place. This law was enacted to empower corporations organized under the laws of the Netherlands to transfer their seats or domiciles from the territory of continental Netherlands to any other territory of the kingdom, that is, to the Netherlands East Indies, to Curacao in the Netherlands West Indies, or to Surinam, Netherlands Guiana. Pursuant to that law plaintiff, on September 27, 1940, duly transferred its domicile to Paramaribo, Surinam.

On May 13, 1940, the Netherlands government removed to London, England, where it is now temporarily residing and exercising its functions as a government in exile. On June 7, 1940, in order to protect the Netherlands' assets abroad from being used for the benefit of the invading forces through duress exercised upon persons in the occupied area, the Netherlands government promulgated a decree which suspended the power of acting on behalf of any Netherlands corporations or individuals within enemy occupied territory, in so far as such purported action related to assets outside such territory. This law is still in effect and valid.

In approaching the decision of this motion the existence of certain factors must be acknowledged. If this court should decide that a mere notice emanating from a person in German occupied territory, where individuals are completely under the control of the invading force, constitutes a claim under section 51-a, there would be placed in the hands of the invader an effective means to block individuals and corporations otherwise entitled thereto from obtaining their property in this country. By thus tying up the funds or property for at least a year another facility for practicing duress and oppression would be placed at the disposal of those who have demonstrated their resourcefulness along those lines. If possible, then, a determination should be reached which would avoid such a palpable injustice, and also be consistent with our laws.

Primarily, I find that there is no " person " other than plaintiff which is claiming the deposit herein involved. Upon examination of the cable and letter received by defendant, it seems that there is no question of different corporate personalities presented, but solely one of authority to represent the plaintiff corporation. That question of authority can be determined when plaintiff attempts to prove its case upon the trial. If plaintiff cannot establish adequate corporate authority it will fail. The sum in suit is admittedly owing to the plaintiff corporation. The cablegram

and letter received by defendant at most are to the effect that authority to control such sum rests in certain persons in continental Netherlands. Consequently, there is no dispute between different entities claiming a fund. Defendant has failed to show the existence of any corporation distinct from the plaintiff which is making a claim. If any issue at all arises because of those two communications, it is merely one of authority, under the applicable law, to bind the depositor corporation. An adverse contention of authority to act for the plaintiff does not constitute a claim asserted by a person not a party to this action.

It is urged that the court may not examine into the question as to whether the notices received by defendant are merely assertions of a right to the fund without any reasonable basis upon which the assertion rests. There is no need for any extended discussion of this problem of whether section 51-a can be invoked where the purported adverse claim has no foundation.

I am fully in accord with the discussion of the precedents and legal questions involved, contained in the opinion of Mr. Justice WALTER in *Koninklijke Lederfabriek* v. *Chase Nat. Bank* (177 Misc. 186) where it was said (p. 189): "The application consequently is not to be granted unless there be a claimant other than the plaintiff in the action and a claim other than that asserted by such plaintiff. The court is not to determine the merits of the claim asserted by such other claimant. Neither disputed questions of fact nor debatable questions of law are to be decided. The very object of giving the notice is to bring the other claimant before the court so that such questions may be decided after hearing him. But I regard it as equally obvious that it must be made to appear that there are disputed questions of fact or debatable questions of law to be decided. More than the mere words 'I claim' is requisite. There must be facts showing that some one who could sue in our courts asserts something which, if proved to be true, would be recognized by our courts as an enforcible cause of action, for the hazard against which the defendant is to be protected is the hazard of double liability and not the hazard of the inconvenience and expense of defending a baseless lawsuit."

Applying these principles, I find that the notices herein do not constitute "claims" within the meaning of section 51-a of the Civil Practice Act. It was recently held that "the statement of the duly accredited Envoy Extraordinary and Minister Plenipotentiary of the Netherlands in the United States * * * is conclusive in our courts as to the law of the Netherlands." (See *Anderson* v. *N. V. Transandine Handelmaatschappij*, 28 N. Y. Supp. [2d] 547; affd., 263 App. Div. 705.) The Netherlands

Minister has certified here that the law under which plaintiff corporation changed its corporate seat (and the law of June 7, 1940, hereinabove referred to) " have been duly enacted and are valid and binding acts of the State of the Netherlands in full force and effect." Under the decree of June 7, 1940, any notice of claim emanating from the occupied territory would have no basis whatsoever in so far as it relates to property of the plaintiff corporation in the United States. The validity of such notices would depend upon decrees of the invading and usurping German military forces, or their attempted cancellation of the Netherlands government decrees.

The government of the United States has refused to recognize the German military control of Holland. Any decrees by this unrecognized occupying force would not have " the force and effect of mandates of a lawful sovereign." (*Moscow Fire Ins. Co.* v. *Bank of New York*, 280 N. Y. 286.) In withholding recognition of the Nazi regime in continental Netherlands, the government of the United States has made a determination of policy which our courts should follow. Therefore, any German decrees promulgated in the Netherlands should be given no force or effect whatever in the determination of questions involving property in this State. The purported claims to the property of plaintiff corporation, consisting of the two communications received herein by defendant, have no reasonable foundation, and should be regarded as capricious and fanciful.

Although I have already found that no person other than plaintiff is making a claim herein, and that the purported " claim " has no reasonable foundation, there should be mentioned certain considerations of policy which buttress my determination. The orders of the President of the United States, " freezing " the property in this country of nationals whose countries have been invaded, are well known. The policy of the United States government has been echoed by the Legislature of this State in the enactment of subdivision 7 of section 134 of the Banking Law (often called the " Williamson Act ") which became effective March 24, 1941. (Laws of 1941, chap. 150.) This act in substance provides that all notices, rules and regulations purporting to cancel or to give notice of the cancellation of the authority of any person authorized to withdraw or dispose of cash or securities on deposit in a bank of this State, emanating. from " occupied territory " (as defined in the act) are invalid. Apart from any question of public policy, this statute would undoubtedly protect the defendant from any risk of double payment, since this law categorically states that defendant need not recognize institutions or claims emanating from

occupied territory. To give effect to the notices received by defendant from " occupied territory " might do incalculable injury to plaintiff, and would obviously further the exploitation purposes of the German occupying forces. Neither the facts nor the applicable law upon this motion require a decision resulting in any such injustice.

The motion is denied. Settle order.