**REPUBLIC OF CHINA et al. v. AMERICAN EXP. CO., Inc.**

United States District Court.
S. D. New York.
Jan. 24, 1951.

Burke & Burke, New York City, for plaintiffs.

Carter, Ledyard & Milburn, New York City, for defendant.

SUGARMAN, District Judge.

The pleadings herein disclose allegations in the complaint and admissions, denials, a defense and a counterclaim in the answer as follows: allegations that (a) the National Government at Formosa is the lawful government of the Republic of China, and (b) Directorate General of Postal Remittances and Savings Bank is a department of the postal system of said Government; to which allegations defendant pleads lack of knowledge or information sufficient to form a belief. It is further alleged that (c) neither plaintiff is a citizen, resident or inhabitant of the United States, (d) defendant is a Connecticut corporation, licensed to do, and doing a foreign banking business in New York State, and (e) the matter in controversy exceeds $3,000; which allegations the defendant admits. It is then alleged that (f) plaintiffs now have on deposit at defendant's New York agency $524,990.16 in the name of Directorate General of Postal Remittances and Savings Bank to whom defendant agreed to repay said sum upon demand, and (g) on or about February 1, 1950, defendant advised plaintiff Directorate General of Postal Remittances and Savings Bank that it had blocked said account and would not make payments therefrom and, despite demand, it refuses to pay any part of said sum to plaintiffs; which allegations defendant denies, except admitting it holds a credit balance in said amount standing in the name of Directorate General of Postal Remittances and Savings Bank which it has not paid to the plaintiffs. It is finally alleged that (h) said sum is due, owing and unpaid to plaintiffs from defendant; to which allegation defendant pleads lack of knowledge or information sufficient to form a belief. Judgment for $524,990.16 with costs is then demanded.

In addition to the aforesaid admissions and denials, the defendant pleads an "affirmative defense" averring that, in November, 1949, plaintiff Directorate General

of Postal Remittances and Savings Bank established with the New York agency of defendant a credit balance in the sum of $500,000.00; that defendant received from said plaintiff specimen signatures of certain named persons entitled to draw on said credit; that, on January 30, 1950, defendant received from one Su Yu-nung "Director General of Posts, Peking, China" a cable as follows: "We Are Authorized By Government To Take Over Directorate General Of Postal Remittances And Savings Bank Whose Former Officers Mr. T. Y. Ho And Others Have Fled To Hongkong And Taiwan With Cipher Keys And Accounts (Stop) Please Stop All Payments From All Accounts In Name Of Said Postal Bank And T. Y. Ho And Company And Wire Reply Amount Still Standing To Their Credit (Stop) All Drafts And Documents Signed By Said Officers Of Postal Bank Are Null And Void (Stop) You Certainly Realize The Serious Consequences In Case This Telegraphic Instruction Is Not Acted Upon (Stop) Su Yu-nung Director Genjal (sic) Of Posts 28/28ths".

The "affirmative defense" then continues that, defendant received cables from "The Director General of The Postal Remittances and Savings Bank, Taipeh (Formosa)", one on January 30th, 1950 reading "Due To Resignations Of Several Our Former Officers Please Stop Payment All Drafts, Checks And Advises (sic) Issued Prior To This [Date] Unless Countersigned By T. Y. Ho, Director General Or Our New Officers Stop New Specimens (sic) Signatures Will Follows", and others, on January 30th and 31st, 1950, instructing defendant to debit said balance and pay $16,000.00 to various persons; that the defendant cabled its refusal to honor the debit instructions "pending legal clarification", in reply to which it received from "The Director General of The Postal Remittances and Savings Bank" a reply reading "Received Your Wire Of 31st. Never Received Notice From You Beforehand About Blockade Our Account And Regret Your Refusal Our Order For Payments Stop Please Reply At Once Dates You Received Claim From So-Called Peking China Director General Stop This Directorate Is The Only Lawful (sic) Depositor Of The Account And We Never Hand Over To Any Party Stop If Necessary Please Prepare Papers For Final Court Disposition As Quick As Possible Stop Kindly Wire Reply".

The "affirmative defense" then avers that, on February 24, 1950, defendant received a letter from "Su Yu-nung, Director General of Posts, Peking, China", in substance reiterating his claim to the credit balance and cautioning the defendant against honoring any other asserted authority thereto, following which, on February 27, 1950, defendant received a letter from Taipeh (Formosa) signed by one T. Y. Ho purporting to be the "Director General of The Postal Remittances and Savings Bank" containing a new list of specimen signatures of persons authorized to draw against the balance and purporting to supersede the signatures previously supplied[1].

Continues the "affirmative defense", in June, 1950, one of plaintiffs' attorneys called upon defendant's attorneys, demanded payment and in default thereof threatened the suit which was subsequently commenced herein on August 28, 1950, after which, on September 27, 1950, a person claiming to represent Su Yu-nung also called upon the defendant's attorneys and made claim to the balance. The "affirmative defense" then avers, upon information and belief, that the government Su Yu-nung purportedly represents is the "Central People's Government of the People's Republic of China", claiming to be the only lawful government of China and that "The Directorate General of The Postal Remittances and Savings Bank" is an organization existing under the laws of China and carrying on a postal savings and commercial banking business. The "affirmative defense" finally avers that defendant is willing to pay the balance to the person entitled thereto, but that it is without knowledge

1. T. Y. Ho is the only person whose name is contained in both lists of specimen signatures.

or information sufficient to determine which of the adverse claimants has authority to act on behalf of or draw against the funds credited to the "Directorate General of The Postal Remittances and Savings Bank"; that because of present unsettled conditions in China, it has refused to pay anyone unless it was reasonably assured that such payment would discharge its obligations to everyone and not subject it to double or multiple liability; that because of said uncertainties it would be unfair, unreasonable and inequitable to impose upon defendant the onus of deciding to whom it should make the payment.

There then follows in the answer a "counterclaim for interpleader". It reiterates by incorporation all the allegations set forth in the "affirmative defense" and, in addition, alleges that defendant is a citizen of Connecticut; that none of claimants is a citizen of Connecticut; that by reason of present conditions in China and the status of the Directorate General of The Postal Remittances and Savings Bank, defendant believes that there are others unknown to it, denominated "John Doe" and "Richard Roe", who may have authority to act in connection with the balance; that defendant makes no claim to the balance except for its costs, expenses and attorneys' fees and is not acting in collusion with any of the claimants.

The answer concludes with a demand for an order (1) that Su Yu-nung, the Central People's Government of the People's Republic of China, the persons originally and subsequently authorized to sign with respect to the account, "John Doe" and "Richard Roe" be made parties to this action, to respond to the complaint and counterclaim and to interplead their respective claims; (2) that it be adjudicated who is entitled to the $524,990.16, or any part thereof; (3) that defendant be discharged from any liability, and (4) be awarded its costs, etc.

Upon the joinder of issue, defendant moved, pursuant to Fed.Rules Civ.Proc. 13(h), 22(1) and 67, 28 U.S.C.A., and New York Civil Practice Act Article 28A, for an order—(a) making the aforenamed persons and organizations defendants to the counterclaim asserted in the defendant's answer; (b) requiring them to respond to the complaint and counterclaim and interplead their respective claims; (c) directing defendant to pay into court the $524,990.16 less its expenses, etc., or in the alternative, retain same to the credit of the action, but in either event, to discharge defendant from all further liability with respect thereto. Simultaneously, there came on for hearing a cross motion by the plaintiffs, which will be first hereinafter considered, that the affirmative defense and counterclaim in the defendant's answer be stricken out.

The sole explanation by defendant for the "affirmative defense" is that it sought to preserve the opportunity of having this dispute (in the event that it failed in its quest for interpleader) treated as was a similar suit in Bank of China v. Wells Fargo Bank & Union Trust Co., D.C.N.D. Cal.1950, 92 F.Supp. 920. Had the defendant's prayer for interpleader failed, the affirmative defense might, upon the ground assigned, have survived attack. However, as will hereinafter appear, the interpleader being allowed, the force of the affirmative defense is spent and it no longer has an appropriate place in the pleadings. To the extent that the facts alleged in the "affirmative defense" are carried over by reiteration into the "counterclaim for interpleader", it, of course, survives. The branch of plaintiff's cross motion to strike out the "affirmative defense" is granted.

The plaintiffs' cross motion to strike out the "counterclaim for interpleader" and the defendant's motion for interpleader are jointly hereinafter considered.

In its inceptive stage, this litigation presents an *in personam* action on a debt, wherein a foreign state and a citizen, subject or agency thereof (which, is not clear) are plaintiffs and a citizen of Connecticut authorized to do, and doing business in this judicial district, is defendant. The requirements of jurisdiction, venue and process are satisfied. Jurisdiction is adequate

on a double score—first, pursuant to 28 U. S.C.A. § 1331 and 12 U.S.C.A. § 632, a federal question is presented and, second, under 28 U.S.C.A. § 1332(2) there is diversity of citizenship. Proper venue is established by 28 U.S.C.A. § 1391(b) insofar as federal question of jurisdiction is concerned and, by 28 U.S.C.A. § 1391(a) on the basis of jurisdiction for diversity of citizenship. Valid process is evident under Fed.Rules Civ.Proc. 4(d) (3).

But now, the defendant seeks to interplead a revolutionary government that has overrun China, ousted the plaintiff Republic of China from the mainland and purportedly empowered certain persons, also sought to be interpleaded, to seize control of the plaintiff Directorate General of Postal Remittances and Savings Bank and also seeks to interplead persons who were, under the original regime, authorized to act with respect to the account, and others, fictitiously denominated "John Doe" and "Richard Roe", persons who might assert authority with respect thereto. Unless some compelling reason dictates the contrary, the defendant must be enabled to shield itself from the vexation, expense and danger of double or multiple liability born of these conflicting claims.

■ This is a strict interpleader and, aside from the statutory interpleader contemplated by 28 U.S.C.A. §§ 1335, 1397 and 2361, federal courts always enjoyed the power, within their equity orbit, to grant the type of relief sought herein. In State of Texas v. State of Florida, 1939, 306 U.S. 398, at page 405, 59 S.Ct. 563, 567, 830, 83 L.Ed. 817, it was said:

"Before the Constitution was adopted a familiar basis for the exercise of the extraordinary powers of courts of equity was the avoidance of the risk of loss ensuing from the demands in separate suits of rival claimants to the same debt or legal duty. Alnete v. Bettam, Cary, 65(1560); Hackett v. Webb and Willey, Finch 257(1676); see 9 Viner Abr., 419–440; 1 Spence, The Equitable Jurisdiction of the Court of Chancery, 659; Maclennan, Law of Interpleader, 5 et seq. Since, without the interposition of equity, each claimant in pursuing his remedy in an independent suit might succeed and thus subject the debtor or the fund pursued to multiple liability, equity gave a remedy by way of bill of interpleader, upon the prosecution of which it required the rival claimants to litigate in a single suit their ownership of the asserted claim. A plaintiff need not await actual institution of independent suits; it is enough if he shows that conflicting claims are asserted and that the consequent risk of loss is substantial. Evans v. Wright, 13 W.R. 468; Michigan Trust Co. v. McNamara, 165 Mich. 200, 130 N.W. 653, 37 L.R.A., N.S., 986; Webster v. Hall, 60 N. H. 7; Thompson v. Ebbets, 1 Hopk. Ch., N.Y., 272; Dorn v. Fox, 61 N.Y. 264; Yarborough v. Thompson, 3 Smedes & M. 291, 11 Miss. 291, 294; 4 Pomeroy, Equity Jurisprudence (4th ed.) §§ 1319–1329, 1458–1482; Maclennan, supra, 119.

"The peculiarity of the strict bill of interpleader was that the plaintiff asserted no interest in the debt or fund, the amount of which he placed at the disposal of the court and asked that the rival claimants be required to settle in the equity suit the ownership of the claim among themselves."

■ That power has come down into Fed.Rules Civ.Proc. 22 which specifically countenances the right of a defendant, exposed to double or multiple liability, to obtain interpleader by way of counterclaim. However, before the defendant's prayer may be granted, the weight of its impact upon the litigation remaining in the later stage must be tested. If the defendant is permitted to interplead and deposit the fund, then for all practical purposes, it withdraws from the suit and becomes merely an indifferent bystander, Treinies v. Sunshine Mining Co., 1939, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85. This leaves a litigation between rival claimants who align as follows: on the first hand, the Republic of China, The Directorate General of Postal Remittances and Savings Bank (as purportedly represented by those whose specimen signatures were most recently filed with the defendant) and said persons; on the second hand, the Central People's Government of the People's Republic of

China, The Directorate General of Postal Remittances and Savings Bank (as purportedly represented by Su Yu-nung, who "took over" and by those whose specimen signatures were originally filed with the defendant but subsequently purportedly invalidated) and said persons; on the third hand, the fictitious "John Doe" and "Richard Roe" who may assert some claim to the fund. Jurisdiction in the later stage survives notwithstanding all litigants being alien, because of the continued presence, under Title 12 U.S.C.A. § 632, of a federal question, Doidge v. Cunard S. S. Co., Ltd., 1 Cir., 1927, 19 F.2d 500. Whether there survives proper venue and valid process must await development of the later stage. Unlike jurisdiction, these may be waived by the interpleaded defendants. 28 U.S.C. A. § 1406(b), Moore's Federal Practice, 2nd Ed., par. 4.10, pg. 926. par. 8.08, pg. 1628. Such reservation of the questions of venue and process is appropriate for various reasons. One is that, under the facts at bar, what, in the inceptive stage, was admittedly a proceeding *in personam* might well become, in the later stage, a proceeding *in rem*[2]. In this circuit the Court of Appeals, in affirming a decision of our present Chief Judge (238 F. 225), intimated this result when, in Sherman Nat. Bank of New York v. Shubert Theatrical Co., 2 Cir., 1917, 247 F. 256, at page 259, it stated: "Although the relation of a bank to a depositor is that of debtor and creditor, still here there is an indebtedness, the bank knows not to whom, and although the bank may be regarded as merely debtor to the person or persons opening the account, whoever they may be proved to be, still, as between competing claimants, the moneys in the account should be treated as a special fund. The bank is ready and willing to pay it into court, if it be required."

Thus, what emerges from the defendant's commingled funds, into a special fund deposited in the registry of this court, might well be governed by 28 U.S.C.A. § 1655. Another reason for deferring ques-

tions of venue and process for the later stage is that, should the interpleaded defendants not submit to this court (the present defendant having been eliminated by the interpleader, Treinies v. Sunshine Mining Co., supra) there would then remain a fund in the registry of this court with but the present plaintiffs claiming it.

Furthermore, it is difficult to conceive of the interpleaded defendants resisting this court's power to adjudicate the conflicting claims to the fund, particularly in view of their attempt to enter the suit in Bank of China v. Wells Fargo Bank & Union Trust Co., supra and their lively participation in Chase National Bank of City of New York v. Directorate General of Postal Remittances & Savings Bank, Civ.Nos. 58-345 and 58-346, D.C.S.D.N.Y., 95 F.Supp. 733.

This discussion of venue and process, as they may appear in the later stage, is not intended as a ruling thereon, but merely as indicating their prematurity at this time.

■ Predicated upon an affidavit of an Assistant United States Attorney, submitted upon the argument of these motions, that " * * * by letter, * * * the Department of State of the United States of America has requested this office to present the following statement to the Court: ' * * * the United States Government recognizes the National Government of the Republic of China, the present seat of which is at Taipei, Taiwan (Formosa)'.", the plaintiffs urge that interpleader be denied because the claims of those sought to be interpleaded stem from the seizure of power by a government not recognized by the United States. To that effect was the decision of the Supreme Court, New York County in Chase National Bank v. Directorate General of Postal Remittances and Savings Bank, et al.,[3] June 27, 1950, the forerunner of Chase National Bank of the City of New York v. Directorate General of Postal Remittances & Savings Bank, Civ.Nos. 58-345 and 58-346, D.C.S. D.N.Y., 95 F.Supp. 733. However, the

---

**2.** Undeniably, this rationale is not free from doubt. It was intimated in Bullowa v. Provident Life & Trust Co., 125 App.Div. 545, 109 N.Y.S. 1058 (1st Dept.

1908), but later questioned in Hanna v. Stedman, 1921, 230 N.Y. 326, 130 N.E. 566.

**3.** No opinion for publication.

746

New York County Supreme Court was confronted with an interpleader suit initiated by the depositary. All claimants were thus represented and heard. The documentary basis for that decision was far more complete than the sole perfunctory affidavit here. It cannot be foretold whether, with all claimants before this court, the decision here would follow that attained in the Chase case in the New York Supreme Court or that attained in the Bank of China case in the Northern District of California, supra, or, possibly, still some third and different result. Such disposition must await the later stage of the proceeding. To deny interpleader would be in effect to adjudicate, on a most fragmentary record, that these plaintiffs are entitled to the fund, unless the stakeholder, for self-protection, undertook to resist and litigate the plaintiffs' claim. Such burden should not be cast upon the defendant.

The branch of plaintiffs' cross motion seeking to strike out the "counterclaim for interpleader" is denied and the defendant's motion for an order, making the persons and organizations named in the notice of motion herein defendants to the counterclaim asserted in the defendant's answer and requiring said persons and organizations to respond to the complaint and counterclaim herein and interplead their respective claims, is granted.

Defendant bottomed its application upon Fed.Rules Civ.Proc. 13(h), 22(1) and 67 and New York Civil Practice Act Article 28A. It apparently projected Article 28A N.Y.C.P.A. as support for its prayer in the alternative to retain the fund to the credit of this action until final judgment. Resort need not be had to state court practice herein for the federal rules supply adequate guidance. There is no question that Fed.Rules Civ.Proc. 13(h) and 22(1) must be read together (308 U.S. 782, marginal note 3) and are thus properly cited as the basis for the defendant's prayer for relief.

Let the order to be entered hereon comply with Fed.Rules Civ.Proc. 67 in that it direct that the entire fund be deposited into the registry of this court. In due course, the defendant may make application pursuant to 28 U.S.C.A. § 2042 for allowance of its expenses, costs and attorneys' fees.

Settle order on notice.