REPUBLIC OF CHINA et al. v. AMERICAN EXPRESS CO., Inc., et al.

No. 102, Docket 22163.

United States Court of Appeals Second Circuit.

Argued Nov. 16, 1951.

Decided Feb. 4, 1952.

Rehearing Denied Feb. 26, 1952.

---

Carter, Ledyard & Milburn, New York City, William S. Gaud, Jr., Robert Hellendale and Edwin H. Krom, all of New York City, of counsel, for defendant-respondent American Express Co., Inc.

Burke & Burke, New York City, James B. Burke, J. Frederic Taylor, Alexander R. Hamilton, all of New York City, of counsel, for plaintiffs-appellants.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

This appeal, a certificate as provided by Rule 54(b), Fed.Rules Civ.Proc. 28 U.S.C. A., having been granted since a former appeal was dismissed, Republic of China v. American Express Co., 2 Cir., 190 F.2d 334, now calls for decision as to whether it was error to grant defendant's motion for interpleader, pursuant to Rule 22, Fed. Rules Civ.Proc. 28 U.S.C.A., after it had answered and filed a counterclaim for interpleader in the action about to be described. A motion to strike an affirmative defense was also granted but is not here involved.

The suit was brought by the Republic of China and Directorate General of Postal Remittances & Savings Bank against The American Express Co. Inc., to recover a deposit of $524,990.16. The complaint alleged, and the defendant in its answer neither admitted nor denied, that the National Government of the plaintiff Republic of China, located at Taipeh, Formosa, is the lawful government of the Republic of China and that the plaintiff Directorate General of Postal Remittances & Savings Bank is a department of the postal system of that government. It also alleged, and the defendant admitted, that the defendant is a Connecticut corporation licensed to do business as a foreign banking corporation in the State of New York, having a New York Agency in the City of New York, and that the matter in controversy exceeded $3,000.00, exclusive of interest and costs.

The complaint further alleged that the plaintiffs have on deposit with the defendant's New York Agency the sum of $524,990.16 in the name of the Directorate General of Postal Remittances & Savings Bank payable to the named depositor on demand and, although due demands for payment have been made, the defendant has refused and still refuses to pay all, or any part, of it to them. All this the defendant denied except that it admitted having the stated amount on deposit to the credit of the named depositor and was without knowledge or information "sufficient to form a belief" as to whom the entire deposit was due and owing.

In its counterclaim for interpleader the appellee alleged that, on or about November 25, 1949, a credit balance of $500,000.00 was established in its New York Agency in the name of The Directorate General of The Postal Remittances and Savings Bank and that it then received specimens of the signatures of persons who were authorized to draw against it. They were T. Y. Ho, Director General, and five other officers. Various debits and credits to the credit balance were made until January 30, 1950 when the appellee received the following cable from one Su Yu-nung, Director General of Posts, Peking, China:

"We Are Authorized By Government To Take Over Directorate General Of Postal Remittances And Savings Bank Whose Former Officers Mr. T. Y. Ho And Others Have Fled To Hongkong And Taiwan With Cipher Keys And Accounts (Stop) Please Stop All Payments From All Accounts In Name Of Said Postal Bank And T. Y. Ho And Company And Wire Reply Amount Still Standing To Their Credits (Stop) All Drafts And Documents Signed By Said Officers Of Postal Bank Are Null And Void (Stop) You Certainly Realize The Serious Consequences In Case This Telegraphic Instruction Is Not Acted Upon (Stop)."

On the same day the appellee also received a cable from The Directorate General of The Postal Remittances and Savings Bank, Taipeh (Formosa) reading as follows:

"Due To Resignations Of Several Of Our Former Officers Please Stop Payment All Drafts, Checks And Advises Issued Prior To This [Date] Unless Countersigned By T. Y. Ho, Director General Of Our New Officers (Stop) New Specimens Signatures Will Follow."

On January 30 and 31, 1950, the appellee received cabled instructions, dated January 28, and 30, from the Director General of the Postal Remittances and Savings Bank, Taipeh (Formosa) to pay out of its account to various persons amounts totaling $16,000.

On January 31, the appellee cabled the Directorate at Taipeh (Formosa):

"Re Your Cables January 28 And 30 Instructing Payments $10,000 And $6,000 Respectively In View Adverse Claims By Director General Of Posts Peking And Unsettled Conditions Regret Unable To Execute Such Orders Pending Legal Clarification."

On February 2, 1950 the appellee received a cable in reply to the above which, among other things, asserted that the Directorate (at Formosa) was the only lawful depositor of the account, asked the date when the claim from the so-called Peking China Director General was received and requested that steps be taken for final court disposition as quickly as possible to end the blocking of the account.

On February 24, 1950 the appellee received a letter from Su Yu-nung, Director General of Posts, Peking, China, confirming his previous cable and on February 27, 1950 it received a letter from T. Y. Ho, Taipeh (Formosa) as Director General of The Postal Remittances and Savings Bank with new specimens of the signatures of persons authorized to draw on the credit balance and which superseded previous authorizations.

In June 1950 an attorney representing the plaintiffs in New York made a demand upon attorneys representing the appellees for the payment of the credit balance and threatened to bring suit if it were not paid. On August 28, 1950, this present action was brought.

The appellee further alleged on information and belief that the "Government"

which is referred to in the communications of Su Yu-nung is the "Central People's Government of the People's Republic of China" which claims to be "the only proper and lawful government of China," and that The Directorate General of The Postal Remittances and Savings Bank "is a Corporation organized and existing under the laws of China and carries on the business of a postal savings bank and commercial banking activities."

It alleged its willingness to pay the credit balance to the persons entitled thereto but that it had refused to pay the plaintiffs or anyone else without reasonable assurances that such payment would discharge its obligations and not subject it to double or multiple liability. It also alleged its Connecticut citizenship and upon information and belief that none of the above mentioned claimants to the credit balance were citizens of Connecticut. It denied all claim to the credit balance except to have its costs, expenses and attorney's fees deducted therefrom and demanded that all claimants it had named be interpleaded and any others "who may have authority to act on behalf of or claim to be authorized to draw against said credit balance who could be designated only by the fictitious names 'John Doe' and 'Richard Roe.'"

The order appealed from, 95 F.Supp. 740, granted the interpleader, discharged the appellee from all liability in respect to the credit balance upon the payment of $524,-990.16 into the registry of the court and provided for the payment of the appellee's costs, expenses and attorney's fees out of that sum upon application within thirty days after final judgment.

Reversal of the order is sought on the sole ground that the court was without jurisdiction because: (1) of the sovereign immunity of the plaintiff; (2) of the contention that after the discharge of the appellee only aliens will be left as parties to the suit; and (3) of the asserted fact that the persons sought to be interpleaded are representatives of an unrecognized foreign government who have no standing to sue and are, therefore, not adverse claimants as a matter of law.

It is, and long has been, well settled that a friendly, foreign sovereign, recognized by the United States, cannot be sued in the courts of this country without its consent. The Schooner Exchange v. M'Faddon, 7 Cranch 116, 117, 3 L.Ed. 287; Puente v. Spanish Nat. State, 2 Cir., 116 F.2d 43, certiorari denied, 314 U.S. 627, 62 S.Ct. 57, 86 L.Ed. 504. But this consent need not be expressly given and when a sovereign sues in our courts to enforce a claim "it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter." United States v. The Thekla, 266 U.S. 328, 339, 340, 45 S.Ct. 112, 113, 69 L.Ed. 313. To like effect are The Nuestra Senora de Regla, 108 U.S. 92, 2 S.Ct. 287, 27 L.Ed. 662, and The Paquete Habana, 189 U.S. 453, 23 S.Ct. 593, 47 L.Ed. 900. Accordingly, we have held that a sovereign who sues in our courts so submits itself to the jurisdiction it has invoked that defenses by way of set-off and of counterclaim are available against it. United States v. National City Bank of New York, 2 Cir., 83 F.2d 236, certiorari denied, 299 U.S. 563, 57 S.Ct. 25, 81 L.Ed. 414; see Dexter & Carpenter, Inc., v. Kunglig Jarnvagsstyrelsen, 2 Cir., 43 F.2d 705, 708, certiorari denied, 282 U.S. 896, 51 S.Ct. 181, 75 L.Ed. 789.[1] But the waiver of immunity does not extend beyond, at most, counterclaims which are based upon the subject matter of the suit. Immunity from claims based upon other causes of action was expressly left undisturbed by the decision in The Thekla, supra, as was pointed out in United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888.

Thus, the subject matter of the suit which the sovereign has brought determines the extent to which immunity has thereby been waived. When the subject matter is the right to collect a deposit of money which the holder admits it owes and

---

1. In The Nuestra Senora de Regla, supra, this submission to jurisdiction was even extended beyond strict defenses and a judgment for damages against the United States was directed. But see United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888.

stands ready to pay to the party entitled to collect, and there are adverse claimants, *i. e.*, where, as here, there is a strict interpleader situation,[2] the sovereign's immunity will not prevent interpleading the adverse claimants. The underlying reasons are the same as in The Thekla, supra, and in The Siren, 7 Wall. 152, 19 L.Ed. 129. See The Western Maid, 257 U.S. 419, 434, 42 S.Ct. 159, 66 L.Ed. 299.

There is, indeed, language in Kingdom of Roumania v. Guaranty Trust Co. of New York, 2 Cir., 250 F. 341 at page 343, 345, certiorari denied 246 U.S. 663, 38 S.Ct. 333, 62 L.Ed. 928, which at first blush appears to be opposed to our holding in this case. That was a suit by a foreign sovereign to collect a bank deposit and the debtor bank obtained an order substituting one Arditti, who had an unrelated claim against the plaintiff, as the defendant and secured its own discharge upon the payment into court of the amount of the deposit the plaintiff had sued to recover. After stating that no "reasonable basis is laid for an interpleader even between private persons" the court also pointed out that a suit by the sovereign against the bank to recover a deposit owed was not a waiver of its immunity from suit by other parties and added, "If this be not so, the immunity can be frittered away either by interpleader or attachment in any case where a foreign sovereign undertakes to collect a debt owed it." However, since that suit was one in which it had been recognized that the third party claimant could not be interpleaded by the bank, we think it reasonable to believe that so linking interpleader and attachment without dis-

tinction in connection with a waiver of immunity was either a direct reference to the particular kind of so-called interpleader there attempted or was inadvertent but, if not, we are unable to agree and hold that here interpleader was properly allowed.

▮ Nor was the original diversity jurisdiction of the court under 28 U.S.C. § 1332 destroyed by the order allowing interpleader. Rossetti v. Hill, 9 Cir., 162 F.2d 892; Security Trust & Savings Bank of San Diego v. Walsh, 9 Cir., 91 F.2d 481; Hunter v. Federal Life Ins. Co., 8 Cir., 111 F.2d 551; Mallers v. Equitable Life Assur. Soc. of the United States, 7 Cir., 87 F.2d 233, certiorari denied 301 U.S. 685, 57 S.Ct. 786, 81 L.Ed. 1343. See also, Harris v. Travelers Ins. Co., D.C.E.D.Pa., 40 F.Supp. 154.[3] The appellants' argument to the contrary is based upon the theory that the order, by discharging the appellee from liability, left no one but aliens as parties to the suit who will then be in litigation with each other in an action separate and distinct from the initial one. We cannot agree. The subsequent litigation will be ancillary to the original suit and the initial jurisdiction of that is sufficient. Sherman National Bank of N. Y. v. Shubert Theatrical Co., 2 Cir., 247 F. 256; Marine Midland Trust Co. of N. Y. v. Irving Trust Co., D.C.S.D.N.Y., 56 F.2d 385, appeal dismissed, Marine Midland Trust Co. of New York v. Eybro Corporation, 2 Cir., 58 F.2d 165.

▮ The final argument of the appellants, and the one urged most strongly, is that the alleged adverse claimants, being representatives of an unrecognized foreign government, had no standing to sue and

2. Sherman Nat. Bank of New York v. Shubert Theatrical Co., 2 Cir., 247 F. 256, 259.

3. The Supreme Court, in Treinies v. Sunshine Mining Co., 308 U.S. 66, at page 73, note 17, 60 S.Ct. 44, 84 L.Ed. 85, alluded to the above cited cases but, since the Court was there concerned with an interpretation of the Interpleader Act, it expressly refused to pass on the correctness of them. The implications of the Treinies decision is discussed in 3 Moore, Federal Practice (2d Edition, 1948) at page 3029 where it is said, "The Treinies case, based as it is upon the narrow view that the real controversy is between the claimants, does not answer the question as to federal jurisdiction under paragraph (1) [of Rule 22] where there is diversity between the stakeholder and the claimants but not diversity between the claimants." The writer then answers the question, at page 3012 where he stated, "Jurisdiction of an action under paragraph (1) [of Rule 22] is well founded if there is diversity or alienage between the plaintiff on one side and claimants on the other, although there is no diversity between the claimants."

consequently, as a matter of law, could not be adverse claimants for the purpose of allowing interpleader. See Koninklije Lederfabriek "Oisterwijk", N. V. v. Chase National Bank of the City of N. Y., 177 Misc. 186, 30 N.Y.S.2d 518, affirmed 263 App.Div. 815, 32 N.Y.S.2d 107 and Amstelbank, N. V. v. Guaranty Trust Co. of N. Y., 177 Misc. 548, 31 N.Y.S.2d 194. Granted that appellants' legal position is sound as to the disability of such parties to enforce claims in our courts, whether these alleged adverse claimants are in fact representatives of an unrecognized foreign government, and not private citizens or corporations, is itself an issue but one which cannot be decided upon the meagre record in that respect now before us. The record on this point merely contains assertions and counter assertions of the parties. The relevant facts should be found and given effect after adequate hearing on the remand. Cf. Chase National Bank of the City of N. Y. v. Directorate General of Postal Remittances, Sup., 112 N.Y.S.2d 14. June 8, 1950, order modified, 278 App.Div. 824, 105 N.Y.S.2d 416, order clarified, 278 App.Div. 935, 105 N.Y.S.2d 923.

In all other respects this record shows that the order appealed from was not erroneous. See Rule 22, Fed.Rules Civ.Proc. 28 U.S.C.A.

Order affirmed and cause remanded for further proceedings in accordance with this opinion.

### On Petition for Rehearing

PER CURIAM.

The filing of this petition was evidently prompted by the failure to observe that we merely held that the record before us did not show the judgment of interpleader to be erroneous. Consequently we affirmed that judgment and The American Express Co. Inc., stands discharged as provided in it.

The remand is for the purpose of determining the rights of the plaintiffs in respect to the fund paid into court and those, if any, of every interpleaded claimant who may be shown to have standing to file a claim.

Petition for rehearing denied.