A/S KREDIT PANK, Tallinn, Estonia,
Plaintiff,

v.

The CHASE MANHATTAN BANK,
Defendant.

United States District Court
S. D. New York.

Sept. 18, 1957.

Delson, Levin & Gordon, New York City, J. Pinckney Torpats, Arlington, Va., of counsel, for plaintiff.

Milbank, Tweed, Hope & Hadley, New York City, Janet P. Kane, New York City, of counsel, for defendant.

FREDERICK van PELT BRYAN, District Judge.

Plaintiff A/S Krediit Pank, hereinafter referred to as "Krediit", moves, pursuant to Rule 12(b), Fed.Rules Civ. Proc., 28 U.S.C., to dismiss the counterclaim for interpleader pleaded in the defendant's answer on the ground that it fails to state a claim upon which interpleader relief can be granted. Defendant, The Chase Manhattan Bank, hereinafter referred to as "Chase", cross-moves, pursuant to Rules 13(h) and 22 (1), F.R.C.P., and 28 U.S.C. § 1655, for an order (a) interpleading additional parties upon its counterclaim and directing service by publication upon such parties, (b) permitting Chase to retain the funds which are the subject matter of the action subject to the claims of the interpleaded parties pending final judgment on its counterclaim, and (c) discharging it from all further liability with respect to the funds at this time.

The action arises out of the following circumstances:

Krediit is a banking corporation organized under the laws of the Republic of Estonia, which was occupied by Soviet Russia in the early summer of 1940. Since that time Estonia has remained continuously under Soviet occupation, with the exception of a period from 1941 to 1944 when the country was occupied by the Germans. The United States has never recognized the occupation of Estonia.

Prior to the occupation Krediit had its domicile and head office in Tallinn, Estonia. At the time of the occupation Krediit had on deposit to its account with the then Chase National Bank, now the Chase Manhattan Bank, the sum of $123,017.18. It had been a depositor in Chase since at least 1935. When Estonia was occupied these funds were blocked under Executive Order 8389, April 10, 1940, as amended, 12 U.S.C.A. § 95a note.

For some years prior to 1940 Krediit had furnished Chase with circulars containing specimen signatures of the persons authorized to draw on behalf of Krediit. Two of these persons who were so authorized at the time of the occupation were Armin A. Matto, a member of the Board of Management, and Fromhold Lauristin (alleged to have changed his name to Laurikivi in 1950), Deputy Manager and Chief Accountant. Both of these gentlemen escaped from Estonia and went to Sweden after the occupation.

On December 10, 1940, some five months after the Soviet occupation, Chase received a so-called "tested" cable from Tallinn signed "A/S Krediit Pank", which directed it to close the Krediit account and place the balance to the account of Gosbank, the cable name for the State Bank of the Union of Socialist Soviet Republics in Moscow, and to advise Krediit and the so-called "beneficiary" when this had been done. A "tested" cable is a cable sent in the private code of the sender (in this case Krediit), of which Chase had a copy. Thereafter, Chase applied to the Foreign Funds Control Section of the Treasury Department for a license permitting it to dispose of the Krediit account in accordance with the tested cable, but no such license was ever issued.

According to affidavits submitted by plaintiff, an extraordinary meeting of the shareholders of Krediit was held in Stockholm in July 1948 at which the domicile of Krediit was moved to Stockholm, the authority of Matto and Lauristin to sign for Krediit was confirmed, and they were granted a power of attorney to act on its behalf. A second meeting of shareholders was held in 1950 at the Estonian Consulate General in New York at which the authority of Matto and Lauristin (whose name by then had been changed to Laurikivi) to act on Krediit's behalf was again confirmed. In addition, one Viktor Kargaja was elected a Trustee and was also authorized to sign on behalf of Krediit and to act on its behalf.

Shortly thereafter Messrs. Matto and Laurikivi wrote to Chase from Sweden outlining the events which had taken place since the occupation, including the shareholders' meetings, and requesting Chase to apply to the Treasury Department for a license to unblock the account. Chase replied, stating that it had applied to the Treasury for unblocking as requested, but advised that in view of the circumstances it would probably be necessary to have a judicial determination "as to the persons entitled to dispose of this account" before any payment could be made. Messrs. Matto and Laurikivi then undertook direct dealings with the Treasury Department on behalf of Krediit with regard to the unblocking of the account, which are not yet concluded. There was further correspondence between Chase and Matto and Laurikivi in which Chase informed them of the outstanding tested cable from Tallinn which had never been cancelled, and again took the position that it could not make payment, if the account should be unblocked, without a judicial determination.

Krediit then brought this action for a declaratory judgment. Its complaint alleges that the original authority to Matto and Laurikivi to act as agents for and sign on behalf of Krediit had never been revoked and had been confirmed by the 1948 and 1950 meetings of shareholders, that it had made demand upon Chase to honor their signatures, which Chase had refused to do without a judicial determination, and that the funds remained blocked by the Treasury Department. Krediit seeks a judgment declaring that Matto and Laurikivi are the only authorized agents of Krediit in the United States and are entitled to dispose of the funds on deposit "in whatever manner that they deem proper and promotive of the interests" of Krediit once the Government has unblocked the funds. It also seeks to restrain Chase from paying the funds to any person other than these alleged agents.

The answer interposed by Chase admits that the specimen signature of Mat-

to as a member of the Board of Managers was on file with it in March 1940, that it had received certified copies of translations of the minutes of the meetings of shareholders of 1948 and 1950 and that it had refused to recognize the authority of Matto and Laurikivi without judicial determination. In its counterclaim for interpleader Chase avers that it has no interest in the funds (now consisting of $115,000 in United States Treasury bills and a credit balance of $12,581.65) except to have its costs, expenses and attorneys' fees paid therefrom, that it had received the uncancelled tested cable of December 1940 and made application for unblocking pursuant thereto, that the claim now made by Krediit is adverse to the claim contained in the tested cable, and that it cannot make payments pursuant to the instructions of Matto and Laurikivi without exposing itself to possible double liability. It asks that Matto, Laurikivi, Viktor Kargaja (the new Trustee allegedly authorized to act on behalf of Krediit at the 1950 meeting), John Doe and Richard Roe, as allegedly authorized representatives of Krediit who directed the sending of the tested cable, and State Bank of the U.S.S.R., be made parties to the action to respond to the complaint and the counterclaim, and interplead their respective claims; that the court adjudge which of these parties is authorized to act on behalf of Krediit; that, subject to license under Executive Order 8389, as amended, it be permitted to pay the funds into the Registry of this court to abide judgment, that it be discharged from further liability and that it be awarded its costs, expenses and attorneys' fees.

The motion and the cross-motion now made present squarely the question of whether, under these circumstances, Chase may have the remedy of interpleader, or whether its counterclaim should be dismissed and the plaintiff should be permitted to proceed to judgment against it on the complaint.

Krediit asserts that Chase is not entitled to interpleader here upon two main grounds. In the first place Krediit argues that the alleged adverse claims to the funds are invalid on their face, or, in any event, so tenuous as to be patently unenforcible and therefore do not give rise to a right to interpleader. Secondly, Krediit maintains that Chase has not designated the parties it seeks to interplead, or their interest in the funds, with sufficient particularity to permit them to be brought in, and in fact such parties have not made any claims against the fund whatsoever. Therefore, Krediit contends they may not be brought into this action as claimants to the fund, and Chase has shown no proper basis for interpleader. It seems to me plain, however, that the circumstances here are such that Chase has the right to avail itself of this remedy.

■ Subdivision 1 of Rule 22, F.R. C.P. provides that persons having claims against a plaintiff may be required to interplead when their claims are such that plaintiff "is or may be exposed to double or multiple liability." A defendant is authorized to the same relief by way of cross-claim or counterclaim.

The remedy provided in Rule 22 is "in addition to and in no way supersedes or limits" the remedies provided by the Federal Interpleader Statute, 28 U.S.C. §§ 1335, 1397 and 2361, as amended in 1948. Moreover, the provisions of Rule 22 supplement the provisions for permissive joinder of parties provided in Rule 20 and Rule 13(h).

■ The interpleader remedy provided by Rule 22(1) may be invoked when a party "is or *may be* exposed to double or multiple liability." The office of modern interpleader is both to protect against possible double liability to actual claimants and against possibility of vexatious multiple litigation. First State Bank of Chariton, Iowa v. Citizens State Bank, D.C.Neb., 10 F.R.D. 424; Metropolitan Life Ins. Co. v. Segaritis, D.C.E.D.Pa., 20 F.Supp. 739; Loew's Inc., v. Hoyt Management Corp., D.C.S.D.N.Y., 83 F. Supp. 863; Equitable Life Insurance Co. of Iowa v. Gilman, D.C.W.D.Mo., 14 F.R. D. 243. Jurisdiction is not dependent on the merits of the claims that are or may

be asserted, as the plaintiff contends. Harris v. Travelers Insurance Co., D.C. E.D.Pa., 40 F.Supp. 154. The mere threat of future litigation is a sufficient basis for interpleader under the rule. Hunter v. Federal Life Ins. Co., 8 Cir., 103 F.2d 192.

As stated in Metropolitan Life Ins. Co. v. Segaritis, supra, 20 F.Supp. at page 741:

"It thus becomes clear that the jurisdiction of this court to entertain an interpleader bill does not depend upon the validity or even bona fides of the claims of the respective defendants. It is obvious that in almost every case the claim of one of the parties will ultimately be determined to be invalid. That, however, is a matter for determination at the trial and cannot affect the jurisdiction of the court. As we have shown, the purpose of an interpleader bill is as much to protect a stakeholder from the expense of double litigation, however groundless, as it is to protect him from the risk of double liability. That in the opinion of the court he will ultimately escape the latter is no ground for refusing interpleader. Nor does the mere fact that a contractual relationship exists between the plaintiff and one of the defendants, under which the fund is required to be paid to such defendant, defeat the right to interpleader."

The plaintiff cites a number of cases to the effect that only actual, and not potential, conflicting claims warrant interpleader. These cases do not relate to interpleader under Rule 22(1) and none are applicable here. Typical is Klaber v. Maryland Casualty Co., 8 Cir., 69 F.2d 934, 106 A.L.R. 617, on which plaintiff places strong reliance. That case was not decided under Rule 22(1) but under the Interpleader Act of 1926 which permitted interpleader only where there were two or more adverse claimants who "are claiming" to be entitled to the funds which are the subject matter of the action. The 1926 Act was superseded by the Judiciary Revision Act of 1948 which restored the language previously used in the Act of 1917, 39 Stat. 929, and authorized statutory interpleader where adverse claimants "are claiming or *may* claim to be entitled" to the funds. 28 U.S.C. § 1335. The restoration of the "may claim" clause in the Federal Interpleader Statute by the 1948 Act makes the Klaber case no longer a precedent, even with respect to statutory interpleader. 3 Moore's Federal Practice, (2d Ed.) 3025. The case never had any bearing on the interpleader authorized by Rule 22(1), "the most modern and liberal method of obtaining interpleader to be found." 3 Moore's Federal Practice, (2d Ed.) 3007.

In the case at bar the tested cable received by Chase from the head office of Krediit in Tallinn, signed by Krediit Pank and sent in its private code, which directed the transfer of the funds to the State Bank of the U.S.S.R., certainly asserted a claim to these funds. Chase took the claim seriously enough to make application to the Treasury Department to unblock the funds pursuant to the directions contained in the cable. Whether or not the claim was or is valid or is still outstanding, and whether the instructions in the cable were actually those of Krediit Pank, or created rights in the State Bank of the U.S.S.R., are questions which have not been determined.

Moreover, Messrs. Matto and Laurikivi, who are not parties to the present action, apparently claim the right to dispose of the funds of Krediit "in whatever manner they deem proper and promotive" of Krediit's interests, as Krediit alleges in its present action for a declaratory judgment. These claims present additional questions which are undetermined.

Chase is thus in a dual dilemma. On the one hand it is faced with a potential if not actual claim to these funds on the basis of the tested cable. But assuming that this claim could not be successfully asserted at this stage by the State Bank of the U.S.S.R. as alleged beneficiary, or

by whoever signed the cable on behalf of Krediit, Chase would still be faced with another prong of its dilemma. There would remain the question of who properly and lawfully represents Krediit at this time and is authorized to act for it.

This question is not free from doubt. Whether Messrs. Matto and Laurikivi are authorized agents of Krediit entitled to dispose of the funds; whether the shareholders' meetings of 1948 and 1950 were duly authorized and could and did take valid action on behalf of Krediit; whether there are other persons in Tallinn, Estonia, who are now duly authorized to act in Krediit's behalf, and what rights, if any, Viktor Kargaja, the new Director elected in 1950, has or may assert to these funds, are all questions which Chase must answer for itself if it is denied interpleader here. Moreover, for all that appears there may well be interests or rights of depositors and creditors of Krediit which transcend or otherwise affect the interest of shareholders or agents.

Thus, the whole situation is fraught with confusion and danger to the depositary. These claims are not figments of Chase's imagination. Some of them have actually been asserted. Others may be asserted. There is no reason why Chase should be subjected to the possibility of either double liability or vexation by way of multiple litigation arising out of a single liability. It seems to me that the remedy of interpleader provided for in Rule 22(1) was tailored to meet this type of situation and to relieve a depositary from the burden of resolving such questions at its own peril.

Plaintiff's contentions that the parties whom Chase seeks to interplead are not designated with sufficient particularity and that the precise nature of their claims is not specified are not persuasive. The known parties whom Chase seeks to interplead are all designated with particularity. Chase has shown that they have at least potential claims against Chase arising from the funds on deposit, and in so far as Chase is able to do so has shown the nature of those claims.

Chase could scarcely be expected to know the persons who sent the 1940 cable from Tallinn in Krediit's name and in its private code. Plaintiff certainly has produced no evidence on that score. The nature of the claim so asserted appears from the face of the cable itself.

It is quite proper under Rule 13(h) to bring in, as additional parties defendant, the persons who were responsible for sending the cable as parties unknown who may have claims adverse to the claims now asserted by Krediit acting through the purported authority of Messrs. Matto and Laurikivi and whatever claims Viktor Kargaja may have. The procedure which Chase seeks to follow here is the same as that approved in Republic of China v. American Express Co., D.C.S.D.N.Y., 95 F.Supp. 740, affirmed 2 Cir., 195 F.2d 230, a case closely analogous to the one now before the court.

The principles of the Republic of China case are controlling here. There the Republic of China and the Directorate General of Postal Remittances and Savings Bank brought an action against the American Express Company to recover a deposit held by the Express Company in the name of the Directorate General. American Express filed a counterclaim alleging, among other things, that the plaintiff Directorate General had established a credit balance with it in 1949 and furnished specimen signatures of persons entitled to draw on the credit; that on January 30, 1950, it had received a cable signed by one Su Yu-Nung, Director General of Posts, Peking, China, stating that he had been authorized by the Communist Government, which had just assumed control of China, to take over the Directorate General. The cable instructed American Express not to honor the signatures contained in the 1949 signature list. On the same day American Express received a cable from the Director General of Postal Remittances and Savings Banks, Taipeh, Formosa, instructing it not to pay any drafts

unless countersigned by persons whose names appeared on the 1949 signature list or whose names would appear on a new signature list subsequently received. American Express averred that it was willing to pay the credit balance to whatever persons might be entitled thereto, but had refused to pay anything without reasonable assurance that payment would not subject it to double liability. Its counterclaim requested that the court order Su Yu-Nung, the Central Peoples Government of the Peoples Republic of China, which he purported to represent, those who were originally authorized to act with respect to the account, and all others fictitiously denominated John Doe and Richard Roe who might assert authority with respect to the credit, to interplead their claims, and that the court determine who was entitled to the credit balance and discharge defendant from liability.

On a motion by American Express for interpleader the court held that the standing of the claimants and the validity of their claims should not be determined on the basis of the limited papers before it, and stated, 95 F.Supp. at page 746:

> "To deny interpleader would be in effect to adjudicate, on a most fragmentary record, that these plaintiffs are entitled to the fund, unless the stakeholder, for self-protection, undertook to resist and litigate the plaintiffs' claims. Such burden should not be cast upon the defendant."

■ The facts here, though by no means on all fours with those in the Republic of China case, call for a similar holding. Here, as there, the defendant should be permitted to interplead both the known and unknown claimants or potential claimants to the fund and to leave them to litigate the questions of who may be entitled to the funds.

■ The fact that the remaining controversy will be one wholly between aliens will not deprive the court of jurisdiction as plaintiff contends. The Court of Appeals of this Circuit so held in affirming the order of the District Court in Republic of China, 2 Cir., 195 F.2d 230. As the Court there pointed out, the subsequent litigation will be ancillary to the original suit. The original diversity jurisdiction of the court over the action under 28 U.S.C. § 1332 is not destroyed by the order allowing interpleader and the initial jurisdiction of the original suit is sufficient, 195 F.2d 234, and cases there cited. See, also, John Hancock Mutual Life Ins. Co. v. Kraft, 2 Cir., 200 F. 2d 952; Kerrigan's Estate v. Joseph E. Seagram & Sons, Inc., 3 Cir., 199 F.2d 694.

■ Two other matters remain for consideration. The first is the request of Chase that it be authorized to serve all of the parties to be interpleaded by publication pursuant to 28 U.S.C. § 1655. That section provides that where, in an action in the District Court to enforce a claim to real or personal property within the district, a defendant cannot be served within the State, "the court may order the absent defendant to appear or plead by a day certain." If the order is served on such defendants and they fail to appear the court may proceed to adjudicate the controversy as to the property *in rem*. The securities now held by Chase for this account plainly constitute personal property within the district to which a claim has been asserted. None of the interpleaded defendants are within the State of New York. Chase appears to be entitled to an order directing the absent defendants to appear and plead under Section 1655.

But it does not necessarily follow from this that Chase is entitled to serve all of these parties by publication. Section 1655 provides that the order requiring absent defendants to appear or plead "shall be served on the absent defendant personally if practicable, *wherever found*." Only "where personal service is not practicable" is service of the order by publication authorized.

This provision is of some importance for the Section goes on to provide that

"Any defendant not so personally notified may, at any time within one year after final judgment enter his appearance, and thereupon the court shall set aside the judgment and permit such defendant to plead on payment of such costs as the court deems just."

In my view Chase has not shown that personal service on Matto, Laurikivi, Kargaja, or the State Bank of the U.S.S.R. in Moscow, is not practical within the meaning of the statute. It is true that they are not within this State and probably not within the country. But the whole procedure provided by the Section is predicated on the absence of the defendants to be served from the jurisdiction, and mere absence in itself is not sufficient to show that personal service is impractical. Under the scheme of this statute, expressly authorizing service of the order on defendants "wherever found," there appears to be no reason why the order should not be served on the named defendants to be interpleaded in the places where they reside or can be found. These places must be known to or are easily discoverable by Chase. The provision quoted above permitting final judgment to be set aside within a year if service is made by publication rather than personally emphasizes the necessity for making a strong showing that it is not practical to serve the defendants personally. Thus, the order to be entered here should provide for personal service on all of the interpleaded defendants with the exception of John Doe and Richard Roe, who may be served by publication. This is, of course, without prejudice to a further application by Chase for leave to serve by publication in the event that any of the defendants cannot be found.

■ Finally, Chase requests that it be permitted to retain the funds which are the subject of the action, consisting of securities and cash on deposit, in its own hands rather than depositing them in the Registry of this Court. It makes this request because the Alien Property Custodian has denied its application for a license permitting it to pay the funds into the Registry of this Court. Presumably the $115,000 of Treasury Bills are already held in safe-keeping in the name of Krediit. For all that appears, however, the credit balance is still merely a general deposit item. In order to protect whoever may eventually be found to be entitled to the funds Chase will take such steps as may be required to segregate the credit balance from its general funds and to hold them as special funds subject only to the judgment of this court and, of course, to the lawful directions of the Office of Alien Property. If this is done Chase will be permitted to retain both securities and cash until the final judgment on its counterclaim, without furnishing bond.

The motion of plaintiff to dismiss the counterclaim for interpleader is denied and the cross-motion of defendant for interpleader is granted subject to the limitations contained in this opinion. Settle order on ten days' notice.