441 F.2d 1082
 17 A.L.R.Fed. 436, 71-1 USTC P 9297, 8
UCC Rep.Serv. 1273
 UNITED STATES of America, Plaintiff-Appellee,
v.
The ESTATE of Pope Lott SWAN, Deceased, Patsy Ann O'Gilvy,
Administratrix of the Estate of Pope Lott Swan,
Deceased, Defendants.
The LUBBOCK NATIONAL BANK, LUBLOCK, TEXAS, et al.,
Interpleaders-Appellees,
v.
Patsy Ann O'GILVY, Administratrix of the Estate of Pope Lott
Swan, Deceased, and Individually, Defendant-Appellee-Cross
Appellant, v. The UNION BANK OF CALIFORNIA,
Defendant-Appellant-Cross Appellee, Zola Blicker, Evelyn
West and J. R. Blumrosen, Defendnats-Appellees.
 No. 29372.
 United States Court of Appeals, Fifth Circuit.
 March 29, 1971, Rehearing Denied on Behalf of Union Bank of
California April 19, 1971, As Amended on Denial of
Rehearing on Behalf of Patsy Ann O'Gilvy
April 26, 1971.
 
 Willaim H. Evans, Evans, Pharr, Trout & Jones, Carlton B. Dodson, Lubbock, Tex., for Union Bank of Cal.
 Bill A. Davis, Lubbock, Tex., for Patsy Ann O'Gilvy.
 Eldon B. Mahon, U.S. Atty., Alex H. McGlinchey, Asst. U.S. Atty., Fort Worth, Tex., Clarence J. Brogan, William S. Estabrook, Attys., Tax Div., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Crombie J. D. Garrett, Attys., Dept. of Justice, Washington, D.C., for the United States.
 Ronald M. Yeager, Lubbock, Tex., for Lubbock Nat. Bank.
 J. R. Blumrosen, Lubbock, Tex., for J. R. Blumrosen and Zola Blicker.
 Forrest Bowers, Lubbock, Tex., for Evelyn West.
 Before COLEMAN, AINSWORTH and GODBOLD, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 At stake in this interpleader action is the sum of $35,857.93, the undistributed assets of the Estate of Pope Lott Swan, deceased. On October 18, 1968, the Lubbock National Bank and the County Clerk of Lubbock County, Texas, custodians of these funds, filed a complaint for interpleader under 28 U.S.C. 1335, in the United States District Court for the Northern District of Texas. Named as potential claimants were Patsy Ann O'Gilvy, individually and as administratrix of the estate; Zola Blicker and J. R. Blumrosen, erstwhile attorneys for O'Gilvy and the estate; Evelyn West, a beneficiary under the will of the deceased; Union Bank of California, claiming as purchaser of a Trust Fund Warrant drawn against the funds; and the United States of America, claiming for back taxes. Five of the six defendants filed answers in the action. The interpleaders having failed in their efforts to serve O'Gilvy personally, the court appointed Bill A. Davis as her attorney ad litem.
 
 
 2
 The District Judge heard testimony, made findings of fact and conclusions of law, and awarded $30,000 of the funds to the Government, dividing the remaining $5,857.93 among Blicker, Blumrosen, West, Davis, and Union Bank. From this judgment Union Bank and O'Gilvy, by her attorney ad litem, appeal. We affirm.
 
 I.
 
 3
 Pope Lott Swan of Lubbock County, Texas, died on February 1, 1965. A will contest ensued between two daughters of the decedent, Patsy Ann O'Gilvy and Evelyn West. During the period of the contest, the property of the estate, a sum of $35,857.93, was paid into the Registry of the Clerk of the Lubbock County Court and deposited in the Lubbock National Bank. The contest was settled by an agreement that O'Gilvy would receive three-fourths and West one-fourth of the net estate. The will was thereupon probated, and O'Gilvy appointed independent executrix of the estate without a bond. She took her oath as independent executrix on July 17, 1967.
 
 
 4
 In June of 1966, the District Director of Internal Revenue made assessments against Pope Lott Swan for federal income tax liabilities for the years 1963 through 1966, in the total amount of $33,152.84. On July 1, 1966, the United States filed notice of a federal tax lien covering these assessments with the County Clerk of Lubbock County, Texas.
 
 
 5
 Demands were duly made on O'Gilvy for payment of these federal taxes. In June of 1968 the Government and Zola Blicker, attorney of record for O'Gilvy, reached agreement on a settlement of $30,000. Blicker sent word of the agreement to O'Gilvy, who by that time had moved to California, and requested his co-counsel, J. R. Blumrosen, to take the steps necessary to have the funds released from the Registry of the Clerk of the Lubbock County Court. On assurances by counsel that the tax claim had been settled, the court entered an order releasing the funds. On July 29, 1968, the County Clerk issued a draft-- denominated 'Trust Fund Warrant No. 162'-- in the sum of $35,857.93, drawn on the Lubbock National Bank and payable to 'Patsy Ann O'Gilvy, Independent Executrix of the Estate of Pope Lott Swan deceased.'
 
 
 6
 A struggle now took place for control of the warrant. Blumrosen forwarded it to Blicker. Blicker wrote O'Gilvy and requested that she execute a power of attorney to give him authority to endorse the warrant for her so that he could deposit the money and settle with the Internal Revenue Service. O'Gilvy refused with some heat, and demanded that the warrant be sent to her. Blicker instead returned the warrant to Blumrosen, who took it to the Lubbock County Clerk's Office and persuaded the chief deputy clerk to make an additional entry on the warrant, so that it now read payable to the order of 'Patsy Ann O'Gilvy, Independent Executrix of the Estate of Pope Lott Swan deceased and Zola Blicker, atty.' The Trial Judge found that, while neither Blumrosen, Blicker, nor the chief deputy clerk were authorized to make this alteration, it was not the purpose of the attorneys in causing the alteration to defraud anyone. Blumrosen then transmitted the warrant to O'Gilvy for her endorsement.
 
 
 7
 Mrs. O'Gilvy endorsed the warrant, and on August 21, 1968, presented it to the Union Bank of California for deposit in a previously opened commercial checking account in the name of 'Estate of P. L. Swan, Deceased.' Union Bank's teller failed to notice that the warrant lacked the endorsement of Zola Blicker, and accepted it for deposit. Shortly thereafter Mrs. O'Gilvy withdrew the entire sum, and her whereabouts are unknown. Union Bank, denied payment on the warrant by Lubbock National Bank on account of the incomplete endorsement, brought suit against O'Gilvy in the State of California and recovered a default judgment against her for the full amount. It has not been able to collect on the judgment.
 
 II.
 
 8
 Patsy Ann O'Gilvy is named in this action both individually, as a beneficiary of the estate under the will compromise, and in her capacity as executrix of the will approved by the Lubbock County Court. The record does not indicate that she has ever been formally relieved of her duties.
 
 
 9
 In November of 1968, shortly after the interpleader action was filed, the Trial Judge directed the United States Marshal for the Central District of California to serve a copy of the complaint on O'Gilvy at her last known address in Huntington Beach, California, pursuant to 28 U.S.C. 2361.[1] The deputy marshal's affidavit indicates that he was able to ascertain that the address given was her correct address, but that before he could serve her personally she moved and left no forwarding address. In March of 1969 the Trial Judge further directed that O'Gilvy by served by publication, as provided by 28 U.S.C. 1655.[2] Notice of the action was then published for six consecutive weeks in a newspaper of general circulation in Lubbock. O'Gilvy having failed to respond to the published notice, the Judge took the final step required by Section 1655 and appointed an attorney ad litem to represent her interests.
 
 
 10
 On appeal, the attorney ad litem contends that failure to serve O'Gilvy personally deprived the District Court of jurisdiction over the conflicting claims to the assets of the estate. We do not agree.
 
 
 11
 Some federal courts have held that in an interpleader action under 28 U.S.C. 1335, personal service is a strict prerequisite to jurisdiction over a particular claimant. See, e.g., Metropolitan Life Insurance Company v. Dumpson, S.D.N.Y.1961, 194 F.Supp. 9. Others have held, to the contrary, that where an interpleader action satisfies the requirements of 28 U.S.C. 1655, constructive service of process pursuant to that section confers jurisdiction over claimants not amenable to personal service. See, e.g., A/S Krediit Pank v. Chase Manhattan Bank, S.D.N.Y.1957, 155 F.Supp. 30, 36, aff'd per curiam, 2 Cir., 1962, 303 F.2d 648; Republic of China v. American Exp. Co., S.D.N.Y.1952, 108 F.Supp. 169, aff'd 2 Cir. 1952, 195 F.2d 230. See generally 3A J. Moore, Moore's Federal Practice P22.04(2) (2d ed.1970). We hold to the latter view.
 
 
 12
 A statutory interpleader action instituted under 28 U.S.C. 1335 is an action to determine the validity of competing claims to identified property. If parties with claims against the property are permitted to exempt those claims from adjudication in an interpleader action by evading personal service, the basic policies underlying interpleader-- permitting a stakeholder to avoid multiple liability and a multiplicity of suits-- are disserved. Cf. National Fire Ins. Co. v. Sanders, 5 Cir., 1930, 38 F.2d 212, 214; 3A J. Moore, supra, P22.02(1). Where, as here, the property is located within the district in which the District Court sits, the action may also fall within that class of actions defined by Section 1655. We believe that Congress did not intend to exclude from coverage under Section 1655 actions such as this one, in which the stake consists of the assets of an estate on deposit in a bank pursuant to court order, the claims are numerous, and service by publication constitutes a reasonable mode of conveying notice to an absent party.[3]
 
 
 13
 The 1916 case of New York Life Insurance Company v. Dunlevy, 241 U.S. 518, 36 S.Ct. 613, 60 L.Ed. 1140, has been cited for the proposition that jurisdiction over the person of a claimant in an interpleader action requires personal service. See Cordner v. Metropolitan Life Insurance Company, S.D.N.Y.1964, 234 F.Supp. 765, 772-773; Metropolitan Life Insurance Company v. Dumpson, S.D.N.Y.1961, 194 F.Supp. 9, 11; Aetna Life Ins. Co. v. Du Roure, S.D.N.Y.1954, 123 F.Supp. 736, 740. Dunlevy concerned an interpleader action brought in the state courts of Pennsylvania. The Pennsylvania counterpart at that time of what is now 28 U.S.C. 1655 did not provide for effective representation of the interests of a claimant not personally served, but permitted his claims to be disposed of on the basis of 'feigned issues.' See New York Life Insurance Company v. Dunlevy, 241 U.S. 518, 520, 36 S.Ct. 613, 60 L.Ed. 1140 (1916); New York Life Ins. Co. v. Dunlevy, 9 Cir., 1914, 214 F. 1, 6-8. To the extent that Dunlevy turned on the interpretation of Pennsylvania law, it is inapposite in a federal statutory interpleader action. To the extent that it turned on constitutional considerations of due process, we are satisfied that it does not control this case. Where the stake in an interpleader action is a fund comprising the assets of an estate, and the claimant is the executrix who has absented herself from the state, converted an asset of the estate to her own use, and rendered herself inaccessible to personal service, the procedures of Section 1655 as applied by the court below are constitutionally sufficient. Cf. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
 
 
 14
 We conclude that the District Court had jurisdiction over the claims of appellant O'Gilvy to the fund in the instant action.
 
 III.
 
 15
 Union Bank contends that the District Court erred in holding that its claim to the proceeds of the trust fund warrant was subordinate to that of the Government. We disagree with the bank's contention.
 
 
 16
 It is conceded by all parties that the trust fund warrant is a negotiable instrument, as that term is defined in Tex.Bus. & Comm.Code 3.104 V.T.C.A.[4] Though Union Bank gained possession of the warrant and gave value for it, it did not become thereby a 'holder in due course,' since it took the warrant with notice of a claim to it on the part of Zola Blicker as co-payee. See Tex.Bus. & Comm.Code 3.116, 3.302(a)(3).[5] Thus, by virtue of Tex.Bus. & Comm.Code 3.306(1), the bank took the warrant subject to 'all valid claims to it on the part of any person.' Comment 2 to 3.306 expands on this latter phrase as follows:
 
 
 17
 'All valid claims to it on the part of any person' includes not only claims of legal title, but all liens, equities, or other claims of right against the instrument or its proceeds * * *.
 
 
 18
 Any claim of right against the Swan estate was also, for all purposes here material, a claim of right against the warrant, which was simply a draft drawn against the assets of the estate for the purpose of facilitating payment of claims against the estate out of those assets.
 
 
 19
 The Trial Judge found that a federal tax lien attached to all property of Swan's estate under 26 U.S.C. 6321 and 6322 when the United States Government made assessments for taxes against Swan in June of 1966. The Government recorded this lien with the County Clerk of Lubbock County on July 1, 1966. The lien constituted a claim against the estate at the time O'Gilvy deposited the warrant in the Union Bank two years later. Thus, unless Union Bank can cite some provision of federal tax lien law which alters the effect of 26 U.S.C. 6321 and 6322 and Tex.Bus. & Comm.Code 3.306(1), its claim to the assets of the estate is subordinate to the Government's lien.
 
 
 20
 Section 6323(b) of 26 U.S.C. provides that even where (as here) the Government has filed a notice of its lien with the appropriate State office (see 6323(a), (f)),
 
 
 21
 * * * such lien shall not be valid--
 
 
 22
 (1) * * * With respect to a security (as defined in subsection (h)(4))--
 
 
 23
 (A) as against a purchaser of such security who at the time of purchase did not have actual notice or knowledge of the existence of such lien * * *.
 
 
 24
 For the purposes of this provision, a negotiable instrument is a security. See Section 6323(h)(4). The Trial Judge found as a fact, however, that Union Bank's teller (and consequently Union Bank) did not exercise due diligence in accepting the draft for deposit without inquiry into the lack of an endorsement by the co-payee Zola Blicker, and that by virtue of 26 U.S.C. 6323(i)(1)[6] Union Bank must be deemed for purposes of the transaction to have had actual notice or knowledge of the Government's lien. After a careful examination of the record we are unable to say that the Trial Judge's finding is without adequate evidentiary support in the record or that it was induced by an erroneous view of the applicable law. Cf. United States v. Richberg, 5 Cir., 1968, 398 F.2d 523, 530; Davis v. Parkhill-Goodloe Company, 5 Cir., 1962, 302 F.2d 489, 491. Thus, under the clearly erroneous rule it may not be set aside. Fed.R.Civ.P. Rule 52(a); Cedillo v. Standard Oil Company of Texas, 5 Cir., 1961, 291 F.2d 246, 248, cert. denied, 368 U.S. 955, 82 S.Ct. 397, 7 L.Ed.2d 387. It follows that Union Bank derives no benefit from the provisions of 26 U.S.C. 6323(b), which confers 'superpriority' on purchasers without notice or knowledge of a Government lien, and that the Trial Judge was correct in concluding that the claim of Union Bank is subordinate to the Government's claim.
 
 IV.
 
 25
 It is contended by Union Bank that the Trial Court also erred in subordinating its claims against the assets represented by the trust fund warrant to the claims of attorneys Blicker and Blumrosen. O'Gilvy through court-appointed counsel contends that the attorney claims were claims against her in personam and therefore the District Judge had no jurisdiction over them in this interpleader action. We reject these contentions.
 
 
 26
 The Trial Judge found that, for their services to Patsy Ann O'Gilvy and to the Estate of Pope Lott Swan, Attorneys Blicker and Blumrosen were entitled to $1,110.49 and $1,000 respectively. No party to this appeal contests the finding that these were reasonable attorney's fees.
 
 
 27
 Under Texas law, a personal representative who contracts for the services of an attorney does so as an agent for the estate, and payment of the fees is not the personal obligation of the representative. 18 Tex.Jur.2d Decedents' Estates 862; see Portis v. Cole, 11 Tex. 157; Hare v. Pendleton, Tex.Civ.App., 214 S.W. 948, 950 (1919), rev'd on other grounds, Tex.Com.App., 231 S.W. 334 (1921), and cases cited therein. It is immaterial whether the attorney's claim is founded on an express contract or on a quasi-contractual theory, see Rowe v. Dyess, Tex.Com.App.1919, 213 S.W. 234, 235; 7 Tex.Jur.2d Attorneys at Law 63, 64 (1959). Even where, as appears to be the case here, the attorney's services consist in part of defense of a will at the behest of the personal representative named therein, reasonable attorney's fees are recoverable by statute out of the assets of the estate. V.A.T.S. Probate Code 243 (1959). Thus the claims of Blicker and Blumrosen were claims to the finds in the possession of the interpleader bank, see 28 U.S.C. 1335, and the District Court had jurisdiction to determine their extent and priority. Cf. Bolton v. Baldwin, Tex.Civ.App.1933, 57 S.W.2d 957.
 
 
 28
 Under Texas law, expenses of administration, including attorney's fees, receive high priority among conflicting claims against a decedent's estate. See V.A.T.S. Probate Code 322 (1959); Lang v. Shell Petroleum Corp., 1942, 138 Tex. 399, 159 S.W.2d 478. As noted above, Tex.Bus. & Comm.Code 3.306 subordinates the rights of Union Bank in the proceeds of the trust fund warrant to all claims of right against the funds on deposit in the Lubbock Bank. The Trial Judge was correct in according priority to the attorney's claims.
 
 
 29
 Affirmed.
 
 
 
 [1]
 28 U.S.C. 2361:
 In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.
 Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.
 
 
 [2]
 28 U.S.C. 1655:
 In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear to plead by a day certain.
 Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.
 If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action. * * *
 Any defendant not so personally notified may, at any time within one year after final judgment, enter his appearance, and thereupon the court shall set aside the judgment and permit such defendant to plead on payment of such costs as the court deems just.
 
 
 [3]
 We do not view 28 U.S.C. 2361, which provides for personal service in statutory interpleader actions, as surplusage. Section 2361 authorizes district judges to restrain defendants in interpleader actions from instituting independent proceedings affecting the property involved in the interpleader action. Absent personal service, a claimant may not be bound by a restraining order issued pursuant to Section 2361. 28 U.S.C. 1665 confers no such authority on the district court; it merely complements 28 U.S.C. 1335 by conferring on the court limited jurisdiction over persons whose claims have been brought within the subject-matter jurisdiction of the court under Section 1335
 
 
 [4]
 Chapters 1 through 9 of the Texas Business and Commercial Code comprise the Uniform Commercial Code as enacted in Texas
 
 
 [5]
 Tex.Bus. & Comm.Code 3.116: 'An instrument payable to the order of two or more persons * * * (2) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them.' Tex.Bus. & Comm.Code 3.302: '(a) A holder in due course is a holder who takes the instrument * * * (3) without notice * * * of any defense against or claim to it on the part of any person * * *.'
 
 
 [6]
 26 U.S.C. 6323(i)(1) provides in part: 'For purposes of this subchapter, an organization shall be deemed for purposes of a particular transaction to have actual notice or knowledge of any fact from the time such fact is brought to the attention of the individual conducting such transaction, and in any event from the time such fact would have been brought to such individual's attention if the organization had exercised dur diligence. * * *'
 DOP
 GODBOLD, Circuit Judge (specially concurring):
 I concur in the result and in the opinion of Judge Ainsworth but with this explanation. The trial court held that Union Bank had knowledge or notice because inquiry concerning the missing indorsement of Blicker would have disclosed the existence of the government lien. This case does not present the situation in which a bank pays without an indorsement and there is no nexus between the missing indorser and the government lien, so that inquiry, or insistence upon indorsement, would not result in the existence of the lien being revealed.
 ON PETITION FOR REHEARING
 PER CURIAM.
 It is ordered that the petition for rehearing filed on behalf of Patsy Ann O'Gilvy in the above entitled and numbered cause be and the same is hereby denied.