BACHE HALSEY STUART SHIELDS INCORPORATED, Plaintiff,

v.

Gisela GARMAISE, Arthur Garmaise, Tamar Garmaise, Rachel Gewurz, a/k/a Regina Gewurz, Samuel Gewurz, Werner Gewurz, Fernande Izraeli, Peter Ritter, Louis Drazin, Amnon Rafael, Michale Caspi, G.I.T. International Trust, Shardana Establishment, Golden Life Establishment, Wasco Foundation, Sidney Mauriber and the National Bank of Liechtenstein, Defendants.

No. 81 Civ. 408.

United States District Court, S. D. New York.

July 31, 1981.

Ullman, Miller & Wrubel, New York City, for plaintiff; Joel M. Miller, Martin D. Edel, New York City, of counsel.

Willkie, Farr & Gallagher, New York City, for defendants Gewurz, Izraeli, Peter Ritter, G.I.T. Intern. Trust, Shardana Establishment, Golden Life Establishment and Wasco Foundation; Chester J. Straub, Michael C. Lambert, Brian E. O'Connor, New York City, of counsel.

Guggenheimer & Untermyer, New York City, for defendant Gisela Garmaise; David L. Berkey, New York City, of counsel.

Richard Pikna, New York City, for defendant Tamar Garmaise.

Sidney A. Mauriber, New York City, Temporary Admr.

Arthur Garmaise, pro se.

## OPINION

EDWARD WEINFELD, District Judge.

This is an action for interpleader that arises out of a bitter family feud over the assets of the estate of the patriarch of the family, Judah Leib Gewurz. Bache Halsey Stuart Shields Incorporated ("Bache") holds certain assets in New York in various accounts in the name of different juridical entities established by the decedent, some of the defendants herein. Bache, pursuant to 28 U.S.C. §§ 1335, 1655 and 2361, seeks to be discharged from any liability by reason of refusal to follow conflicting instructions by one or more of the parties to this litigation as to the disposition of those assets, and to be relieved of providing management services with respect to the assets upon their deposit into the registry of the Court, pending judicial resolution of the dispute over the control of those assets. The defendants Gisela Garmaise, a daughter of the deceased, her husband Arthur, and their daughter Tamar (the "Garmaise defendants") support Bache's motion. Those on the other side of the family squabble, the defendants Rachel Gewurz, wife of the deceased, Samuel and Werner Gewurz and Fernande Izraeli, children of the deceased (the "Gewurz defendants"), as well as the juridical entities, the defendants G.I.T. International Trust ("GIT"), Shardana Establishment, Golden Life Establishment, and Wasco Foundation, and also Peter Ritter, a director of GIT, oppose Bache's effort to interplead and move to dismiss the complaint for lack of both subject matter and personal jurisdiction. Before proceeding to the merits of the motions, which present in large measure the same issues, it will be helpful to set forth the factual setting.

The dispute originated following the death in February 1978 of Judah Leib Gewurz ("Judah"), a Canadian citizen then domiciled in Israel. In 1975 he executed a will in Canada while domiciled there; in January 1978, he executed another document in Israel purporting to make testamentary disposition of certain assets. In between, he and his wife Rachel established GIT as an independent juridical entity under the laws of the principality of Liechtenstein. GIT then opened an account at Bache in New York City.

The 1975 and 1978 documents have been the subject of probate proceedings in Canada and Israel, respectively. Under the 1978 instrument, Judah transferred certain assets of GIT to various trust accounts and individuals, defendants herein. While the parties have not clearly articulated their respective positions as to the 1978 instrument, there is a sharp dispute as to whether in fact it is a will and, if so, whether Judah had the power to effect a testamentary transfer of the assets.

In March 1979 Tamar Garmaise, the granddaughter, filed suit in the Surrogate's Court of New York County for letters of temporary administration with respect of Judah's estate. In effect, she claimed she was, under the 1978 document, a distributee of assets held by Bache in accounts in the name of GIT and the other juridical entities. That court appointed the defendant Mauriber temporary administrator of the assets in the Bache accounts upon allegations that the Gewurz defendants were withdrawing assets from those accounts.

In December 1980 the Surrogate's Court revoked the letters of temporary administration and dismissed the petition, finding that, though GIT was an independent juridical entity under the law of Liechtenstein, "[a] vigorously contested issue exists as to the power of decedent to make any disposition of the assets of G.I.T. .... This issue is one to be resolved by a court in decedent's domicile which has jurisdiction of decedent's estate and jurisdiction to determine the validity and construction of his 1978 'will.' "[1] The court also ordered payment of the $18,197 fee of the administrator, defendant Mauriber, out of the assets held by Bache. The Surrogate's order dismissing Tamar's petition was appealed to

---

1. Estate of Judah Leib Gewurz, No. 1347–79, slip op. at 4, exh. C to affidavit of Chester J. Straub, attorney for Gewurz defendants, Feb. 23, 1981.

the Appellate Division, First Department, but this appeal has not been perfected.

The scene of activity then shifted to Liechtenstein. Gisela Garmaise, the daughter of Judah and mother of Tamar, commenced an action there in December 1980 for an accounting of the assets of GIT, which was soon followed by a second action resulting in the appointment of the National Bank of Liechtenstein, a defendant herein, to the supervisory board of GIT. Finally, Rachel Gewurz, the widow, also commenced litigation in Liechtenstein in an effort to secure a judicial determination of various claimants' rights to the GIT assets.

In brief, the underlying dispute is between the Gewurz defendants, "on the one side, and the three Garmaise defendants, on the other, over the assets of G.I.T. That dispute derives from the estate of J. L. Gewurz ... and its resolution will turn on the answer to the questions of who has the right to control the assets of G.I.T. and whether those assets were testamentary." [2]

Against the background of these conflicting claims we consider Bache's position. Although Bache's records indicated that the Garmaise defendants were not empowered to act for the various juridical entities, Bache during 1980 received various communications from Gisela Garmaise and her husband, Arthur, asserting rights to the assets in the accounts and warning Bache not to proceed with distribution to any others under penalty of liability to the Garmaise defendants. Then, after the Surrogate had dismissed Tamar's petition and after Gisela, her mother, had succeeded in obtaining the appointment of the National Bank of Liechtenstein as a supervisor of GIT, Bache was deluged with conflicting directions with regard to the assets in the accounts.

Thus, on January 19, 1981, Bache received a telex message from the National Bank of Liechtenstein informing it that it had the sole right of signature over the GIT assets held by Bache. The same day, Bache received written instructions from Rachel Gewurz to transfer various securities and sums of money out of her own account to other accounts. Two days later, on January 21, 1981, Bache received instructions from the National Bank of Liechtenstein to transfer assets in the accounts of GIT to its account at the Chase Manhattan Bank. On January 23, 1981, Bache received another telex from the National Bank of Liechtenstein instructing it to disregard the previous telex, to retain the assets pending the outcome of the Liechtenstein litigation, and to follow only instructions given jointly by Rachel Gewurz, Peter Ritter, and it. Ritter sent a telex the same day confirming these instructions.

Faced with the two originally conflicting instructions from the National Bank of Liechtenstein and Rachel Gewurz, and also considering the contrary assertions of the Garmaise defendants, Bache understandably commenced this interpleader action on January 26, 1981. This is a classic case for interpleader from the point of view of Bache, a disinterested stakeholder caught in the crossfire of a bitter family feud. It is confronted with a series of Hobson's choices which may subject it to substantial claims upon complying with any of the various demands of the claimants.

Although the National Bank of Liechtenstein reversed its earlier position by requesting that the assets remain at Bache, the Gewurz defendants on this motion ask this Court to order transfer of the assets to Liechtenstein, where the assets would be under the control of the courts there. Given previous changes of position by the National Bank of Liechtenstein and the Gewurz defendants, Bache is uncertain as to a reasonably prudent course of action. The Garmaise defendants have consistently threatened legal action against Bache if Bache transfers the assets contrary to their instructions. Although they are not signatories to the accounts, Bache is not required to evaluate the merits of their conflicting claims at its peril; rather, it need only have a good-faith concern of expensive litigation and multiple liability if it responds to the instructions of certain claimants and not

2. Affidavit of Chester Straub, attorney for Gewurz defendants, Mar. 24, 1981, ¶ 5.

others.[3] That its concern is real and not fancied can hardly be disputed. This is precisely the kind of case for which the equitable remedy of interpleader is designed.

 The Gewurz defendants, however, oppose the relief sought by Bache and move to dismiss the action on the grounds that the Court lacks both subject-matter and personal jurisdiction. The former contention is readily disposed of. With respect to subject-matter jurisdiction, this action is in the nature of statutory interpleader brought pursuant to 28 U.S.C. § 1335. Thus, there is subject-matter jurisdiction if the value of the property at issue is at least $500, there are two or more adverse claimants of diverse citizenship with respect to each other, and plaintiff either deposits in the registry of the Court the assets in question or has posted a satisfactory bond approved by the Court in lieu thereof. As to the diversity requirement, jurisdiction is satisfied if the diversity is "minimal"; that is, all claimants need not be of diverse citizenship with respect to each other as long as any two are.[4]

 There is no question that more than $500 is at stake in this case, nor is there an issue that Bache is prepared to deposit the stake in the registry of the Court, although there is a question as to the form that such a deposit should take, as will be discussed

later. Thus, the only issue is whether there is the requisite minimal diversity.

All the claimants in this case, save defendant Mauriber, the temporary administrator appointed by the Surrogate's Court, are citizens of foreign countries. For diversity to exist, then, Mauriber, who is a citizen of New York, must be a truly adverse claimant. The Gewurz defendants contend that he is not an adverse claimant because all other claimants recognize his entitlement to the $18,197 ordered paid to him by the Surrogate. However, there is a genuine dispute as to the source of that fee: the Garmaise defendants' position is that they have consented to payment of the fee out of the assets at Bache only if it is determined that those assets are part of the estate. That question, of course, underlies the pending dispute. The fact is that Mauriber has not been paid and has a legitimate claim which is the subject of dispute as to the source of payment.[5] Thus, Mauriber's claim to his fee out of the assets at Bache, even if court ordered, is adverse, and he supplies the requisite minimal diversity.[6]

There remains the question of personal jurisdiction over the various Gewurz defendants and juridical entities based in Liechtenstein. The Gewurz defendants contend that the Court does not have personal jurisdiction over them inasmuch as they are foreign citizens domiciled abroad

3. *John Hancock Mut. Life Ins. Co. v. Kraft*, 200 F.2d 952, 953–54 (2d Cir. 1953); *Stuyvesant Ins. Co. v. Dean Constr. Co.*, 254 F.Supp. 102, 108 (S.D.N.Y.1966), *aff'd*, 382 F.2d 991 (2d Cir. 1967); *A/S Krediit Pank v. Chase Manhattan Bank*, 155 F.Supp. 30, 33–34 (S.D.N.Y.1957), *appeal dismissed*, 303 F.2d 648 (2d Cir. 1962); *Metropolitan Life Ins. Co. v. Segaritis*, 20 F.Supp. 739, 741 (E.D.Pa.1937).

4. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967); *Twentieth Century-Fox Film Corp. v. Taylor*, 239 F.Supp. 913 (S.D.N.Y.1965).

5. *Cf. Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1308 (8th Cir. 1977).

6. The Gewurz defendants' emphasis on lack of subject matter jurisdiction is perplexing in light of the clear existence of such jurisdiction under the interpleader rule, Fed.R.Civ.P. 22(1), if Mauriber were found not to be an adverse

claimant. Under the rule, the prerequisites to subject matter jurisdiction are diversity of citizenship and $10,000 in controversy. As to diversity, it must be complete as between the claimants on the one side and the stakeholder on the other. *E. g., Stewart Oil Co. v. Sohio Petroleum Co.*, 315 F.2d 759, 762 (7th Cir.), *cert. denied*, 375 U.S. 828, 84 S.Ct. 71, 11 L.Ed.2d 60 (1963). Bache has offered to amend its complaint under rule interpleader, omitting Mauriber as a defendant-claimant. In this situation, with Bache as a Delaware corporation with its principal place of business in New York, and all remaining claimants as foreign citizens, there is complete diversity of citizenship. It is not necessary to reach Bache's alternative motion since there is subject matter jurisdiction under statutory interpleader, however, and so that aspect of Bache's motion is dismissed as moot.

and were served by mail abroad.[7] Further, they argue, 28 U.S.C. § 2361, the process provision accompanying statutory interpleader, authorizes only nationwide service of process.

Bache responds by relying on 28 U.S.C. § 1655, the lien-enforcement statute.[8] This statute allows an action with respect to a lien, title, claim, or cloud to real or personal property to be brought within the district where such property may be found. Further, in the event a defendant cannot be served within the district, or does not voluntarily appear, the Court may direct such appearance and direct service upon him wherever found, by personal service if practicable.

Many courts have held that § 1655 applies to interpleader actions, and the policy of interpleader supports that view. "A statutory interpleader action instituted under 28 U.S.C. § 1335 is an action to determine the validity of competing claims to identified property. If parties with claims against the property are permitted to exempt those claims from adjudication in an interpleader action by evading personal service, the basic policies underlying interpleader—permitting a stakeholder to avoid multiple liability and a multiplicity of suits—are disserviced." [9] This policy is particularly cogent here, where Bache, a large brokerage house located in New York, an international center of business and commerce available to parties from around the world, is faced with conflicting claims to assets it holds for foreign citizens. To deny interpleader relief to such a stakeholder presages a burgeoning problem whereby persons, however widely dispersed in foreign lands, could take advantage of the financial expertise available in New York without protecting the New York financial institutions when disputes arise as to the ownership or assets placed in their charge.

In *A/S Krediit Pank v. Chase Manhattan Bank*,[10] the New York bank was the stakeholder of assets of an Estonian bank which were claimed by the stockholders of the bank, who had met in Sweden and were contemplating legal action, the State Bank of the Soviet Union, and other foreign claimants in a dispute arising out of the Soviet occupation of Estonia. The court stated that the situation was fraught with risks for the bank which could not be imagined, and interpleader was the precise remedy tailored for the situation. The court specifically directed personal service abroad pursuant to § 1655.[11]

The Gewurz defendants urge, however, that § 1655 is not properly invoked by

7. *See New York Life Ins. Co. v. Dunlevy*, 241 U.S. 518, 36 S.Ct. 613, 60 L.Ed. 1140 (1916).

8. This section provides:

 In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.

 Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.

 If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action. When a part of the property is within another district, but within the same state, such action may be brought in either district.

 Any defendant not so personally notified may, at any time within one year after final judgment, enter his appearance, and thereupon the court shall set aside the judgment and permit such defendant to plead on payment of such costs as the court deems just.

9. *United States v. Estate of Swan*, 441 F.2d 1082, 1085 (5th Cir. 1971).

10. 155 F.Supp. 30 (S.D.N.Y.1957), *appeal dismissed*, 303 F.2d 648 (2d Cir. 1962).

11. *Id.* at 33–37. *See Guy v. Citizens Fidelity Bank & Trust Co.*, 429 F.2d 828, 832–33 (6th Cir. 1970); *Georgia Savings Bank & Trust Co. v. Sims*, 321 F.Supp. 307 (N.D.Ga.1971); *see also Republic of China v. American Express Co.*, 95 F.Supp. 740, 745 (S.D.N.Y.1951), *aff'd*, 195 F.2d 230 (2d Cir. 1952).

a disinterested stakeholder bringing an action as a plaintiff seeking to be discharged from liability. They contend that § 1655 actions are limited to instances in which a party commences an action seeking to enforce a lien on property or to remove a cloud to title, and thus a stakeholder cannot invoke § 1655 unless it itself claims some interest in the property, which is not the case here. They thus attempt to distinguish cases allowing use of § 1655 in interpleader actions on the ground that, in those cases, the stakeholder interposed the interpleader as a counterclaim to an action brought by a claimant to the stake, which original action created the claim against the property.

Such a view of § 1655 in interpleader actions exalts form over substance. It cannot seriously be contended that the conflicting claims of the various defendants in this action are not a cloud on title to the assets held by Bache, and that the result of this interpleader action brought by Bache would be to remove that cloud. That Bache itself claims no financial interest in the property does not affect the legitimacy of its concern over the true title holders. Until the beclouded issue is resolved, it is, as already noted, confronted with multiple suits and multiple liability. In short, Bache has a real interest in the determination of the rightful title holder to the assets, though it may not have an interest in the identity of that title holder. The Court holds that

Bache, as a disinterested stakeholder, may maintain this interpleader action and invoke the lien-enforcement statute, § 1655.[12] As commentators have noted, use of § 1655 in interpleader actions "would afford relief to stakeholders in situations in which the remedy otherwise would be unavailable due to circumstances beyond their control.... Further, utilization of Section 1655 would be consistent with recent trends that are extending the availability of the interpleader remedy in other ways, such as ... the Supreme Court's validation of subject matter jurisdiction under the interpleader statute based on minimal diversity. Moreover, application of Section 1655 would prevent a claimant from evading service to the detriment of the stakeholder, thereby furthering the purpose of interpleader by minimizing the possibility of multiple litigation and the threat of inconsistent results."[13]

Bache is thus entitled to a decree discharging it from liability and granting interpleader relief pursuant to 28 U.S.C. §§ 1335 and 1655. Section 1335 requires as a jurisdictional prerequisite that the stakeholder deposit the assets into the registry of the Court or post a sufficient bond as security in lieu thereof, to abide the ultimate judgment of the Court. Bache has requested that it be permitted to liquidate the securities and bonds in its possession and deposit the proceeds in the registry. This proposal has met with stiff resistance; the Gewurz defendants contend, for example,

12. *See United States v. Estate of Swan*, 441 F.2d 1082 (5th Cir. 1971); *Georgia Savings Bank & Trust Co. v. Sims*, 321 F.Supp. 307 (N.D.Ga.1971). The old case of *New York Life Ins. Co. v. Dunlevy*, 241 U.S. 518, 36 S.Ct. 613, 60 L.Ed. 1140 (1916), is not an obstacle to this interpleader action. Although that case has been cited for the proposition that interpleader actions are in personam, the facts of that case, which was a state interpleader action involving state procedure, suggest that a personal judgment was being rendered against the absent claimant; the Supreme Court noted that the action was "not merely to discover property and apply it to debts." *Id.* at 521 (citing *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877)). On the contrary, the present action concerns a dispute as to a discrete *res*, the assets held by Bache, as to which the defendants assert claims. Especially in light of the actual service upon the defendants made pursuant to Fed.R.

Civ.P. 4, it can hardly be contended that invocation of § 1655 violates the tenets of due process. *See United States v. Estate of Swan*, 441 F.2d 1082, 1086 (5th Cir. 1971) ("We believe that Congress did not intend to exclude from coverage under Section 1655 actions such as this one, in which the stake consists of assets of an estate on deposit in a bank pursuant to court order, the claims are numerous, and service by publication constitutes a reasonable mode of conveying notice to an absent party"; thus due process not violated by taking jurisdiction). *Cf. Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

13. 7 Wright & Miller, Federal Practice & Procedure, § 1711 at 423–24.

that all claimants would suffer if Bache did not continue to exercise its management expertise over the assets, and that deposit into the registry could substantially reduce the value of the assets during the pendency of the litigation. This Court has previously declined to direct such a sale.[14] Upon the argument of this motion, Bache indicated a willingness to continue actual management of the assets upon its discharge from liability. If the parties can agree to Bache's continued management, an order setting forth the terms should be submitted to the Court within ten days; otherwise, Bache is directed to deposit (but not to liquidate) the assets in the different accounts in question in the registry of the Court within ten days, to be held subject to further order of the Court.

Finally, resolution of the underlying dispute among the various claimants depends entirely upon determination of issues of foreign law. Thus, courts in Israel must determine the validity of the 1978 document asserted to have made testamentary transfers. Further, Liechtenstein courts are called upon to determine the validity of GIT and the other trusts as independent juridical entities. There are no issues of American law in this case, and all claimants save one are foreign citizens. Moreover, there is pending litigation in Liechtenstein that should resolve the underlying dispute. In the circumstances, proceeding with discovery and other activity in this action would be duplicative and unnecessarily involve this Court in deciding matters of foreign law in which it has no expertise.

Accordingly, upon the deposit by Bache of the securities, bonds, and other assets now held by it into the registry of the Court within ten days (unless the parties agree that Bache may continue to manage the accounts, as discussed earlier), Bache is discharged from liability, and further action in this case is stayed pending ultimate resolution of the controversy in courts of competent jurisdiction in the countries whose laws apply to this dispute.

14. *Wertheimer v. Bank of Nova Scotia,* 140 F.Supp. 950, 953 (S.D.N.Y.1956).

Submit decree in accordance with this opinion within ten days upon three days' notice.