CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellee, *v.* PIPECO, INC., *et al.*, Defendants-Appellants.—(H. K. FERGUSON *et al.*, Defendants-Appellees.)

Fifth District    No. 80-472

Opinion filed July 29, 1981.

David M. Duree, of O'Fallon, and Leritz & Reinert, P. C., of St. Louis, Missouri, for appellants.

Gilmartin, Hallenbeck and Schroeder, Ltd., of Chicago (Gilbert J. Schroeder and Charles A. Gilmartin, of counsel), for appellee Continental Casualty Company.

Richard R. Hardcastle, III, and Michael E. Wilson, both of Greensfelder, Hemker, Wiese, Gale & Chappelow, of St. Louis, Missouri, for appellee H. K. Ferguson Company.

Samuels, Miller, Schroeder, Jackson & Ely, of Decatur, for appellee J. L. Simmons Company, Inc.

Mr. JUSTICE KARNS delivered the opinion of the court:

This is an interlocutory appeal by Pipeco, Inc., W. L. Waggoner Trucking Company, and Wilbur Waggoner Equipment Rental and Exca-

vating Company, Inc. They appeal from two orders entered by the Circuit Court of Bond County in an interpleader action. Continental Casualty Company (Continental) brought the interpleader action to join all claimants against a subcontractor's bond, on which Continental was obligated as a surety against claims arising from a construction project in Bond County. The appellants were among the claimants named as defendants in the interpleader action.

In one of the orders appealed from, the court permanently enjoined the appellants from prosecuting their claims for actual damages and interest against Continental in an action in Madison County, which also involved claims against Continental for punitive damages and statutory penalties. The effect of the order was to require the appellants to present their claims for actual damages and interest in the interpleader action, consistent with the court's previous determination that interpleader was a proper remedy.

In the other order appealed from, the court stayed further proceedings in appellants' separate action for foreclosure of mechanics' liens filed in Bond County. The defendants in the mechanics' lien foreclosure were the general contractor, H. K. Ferguson Co. (Ferguson), the subcontractor with whom the appellants contracted to furnish labor, material and rental equipment, J. L. Simmons Company, Inc. (Simmons), and the owners, Carlisle Tire & Rubber Company (Carlisle) and the Bradford National Bank of Greenville, Illinois. In the order, the court noted that in an earlier consolidation order it had directed that all pleadings relating to the mechanics' lien be filed in the interpleader. The court struck the appellants' motion for summary judgment in the mechanics' lien action and stayed all proceedings relating to the imposition of mechanics' liens but not relevant to the action for recovery on the surety bond.

The litigation arose from the construction of a manufacturing plant for Carlisle. Ferguson subcontracted a portion of the work to Simmons. Simmons obtained a subcontractor's bond for $645,400, its contract amount. The bond named Simmons as principal, Ferguson as an obligee, and Continental as surety. The bond also provided that it was for the benefit of any person, firm or corporation furnishing labor or materials for use in performance of Simmons' subcontract, as well as for the benefit of Ferguson as named obligee.

On April 23, 1980, Simmons ceased performance and left unpaid the appellants and others who had provided materials and labor. Appellants notified Continental of their claims.

On May 12, 1980, Continental filed a complaint for declaratory judgment in Bond County naming as defendants Ferguson, Carlisle, Simmons, and the appellants, as well as other claimants against the bond. The complaint requested that the court enjoin the defendants from commenc-

ing suit in any other court and that the court adjudicate the amount of recovery, if any, due each of the defendants from the bond. Among the claims listed in the complaint were $149,929.57 claimed by Pipeco, $31,943 claimed by Waggoner Trucking, and $65,412.79 claimed by Waggoner Equipment Rental, the appellants herein. Other claims in considerably smaller amounts were also itemized in the complaint.

The total amount of the claims by the subcontractors and materialmen, including the appellants' claims, was about $323,000. Continental also alleged that it had been advised of "potential delay damage claims" by Ferguson and Carlisle, presumably resulting from Simmons' failure to complete its work on schedule.

Continental asserted that it was seeking declaratory judgment relief, rather than interpleader, because it had no way of ascertaining whether the amounts properly payable as claims against the bond would exceed the bond amount. As a consequence, Continental claimed that it was unable to allege that it had no interest in the funds in question, as would be required for an action in interpleader.

On May 14, 1980, the appellants filed suit for damages in Madison County against Continental, as surety, and Simmons, as principal, on the bond. Against Continental, appellants also sought statutory penalties for vexatious delay in refusing to process or pay their claims and for punitive damages "for tortious interference with their property rights."

Thereafter, appellants moved to dismiss Continental's complaint for declaratory judgment. Appellants alleged that Continental was attempting to file an interpleader without relinquishing its claim to the interpleaded fund; that the sum of the claims listed in the complaint were only one-half the bond amount; and that the complaint unlawfully attempted to restrict the jurisdiction of other courts to hear claims of the respective defendants.

Subsequently, Continental moved for a preliminary injunction to restrain appellants from further proceedings in their Madison County action and from commencing any other actions against Continental in connection with the subject matter of the litigation.

The court heard these motions on May 29. In support of their motion to dismiss, the appellants contended that the potential delay damage claims alluded to in Continental's complaint were merely speculative. The appellants maintained that Ferguson and Carlisle, the latter not a party to the bond whose claim would be derivative through Ferguson, as a practical matter, would not file claims against the bond in amounts that would cause the aggregate claims to exceed the bond penalty, because to do so would result in only partial payment of bond claimants, who would then foreclose liens against Ferguson and Carlisle to recover amounts remaining unpaid for labor and materials provided.

In opposition to the motion to dismiss, Continental argued that the real question was not whether the total claims would exceed the bond amount, but whether Continental should be subjected to multiple lawsuits in different forums. Ferguson joined in the motion to dismiss, contending that if Continental had proceeded to investigate and pay the claims as it had contracted to do, it would not have to concern itself with multiple suits.

Following argument on the motion to dismiss, the court heard evidence on Continental's motion for a preliminary injunction against the appellants' Madison County action. James Roberts testified that he was Continental's manager of fidelity and surety claims. After learning of Simmons' default, he employed a surety consulting service to investigate possible claims. John O'Gara, head of the consulting service, testified to the results of the investigation. Aside from any potential delay damage claims, O'Gara stated that the claims against the bond would consist of the claims of the subcontractors and suppliers working under Simmons, together with Ferguson's direct cost to complete Simmons' work. Viewing the testimony in a light most favorable to Continental, these claims were estimated to total between $510,000 and $560,000. (Through subsequent pleadings, it appears that the total amount of claims against the bond, excluding potential delay damage claims, was $486,838.93.)

Roberts testified that a letter to Continental from Ferguson, dated May 20, 1980, stated that Ferguson would hold Simmons responsible not only for the cost of completing the work but also the costs resulting from the delays caused by Simmons' default and Continental's failure to assume its obligation under the performance bond. Roberts testified that it seemed apparent to him that the total claims could exceed the bond penalty.

Continental also called John Ebaugh, Ferguson's subcontracts manager, to testify as an adverse witness. He indicated that the Simmons portion of the work, which had been taken over directly by Ferguson, was expected to be completed in mid-June 1980. To the best of his knowledge Ferguson had not filed a delay damage claim, although he would not say that Ferguson would not file one. As of the hearing date, neither Ferguson nor Carlisle had demanded any money from Simmons or Continental.

The court took the motions under advisement. On May 29, 1980, the appellants also filed a complaint in the Circuit Court of Bond County for foreclosure of mechanics' liens against Carlisle, Ferguson, Simmons and the Bradford National Bank of Greenville. This action involved the same actual damage claims as those asserted in the Madison County suit against the bond.

In a written order, the court granted the appellants' motion to dismiss

Continental's declaratory judgment action on June 4, 1980. The court ruled that the action could not be based on the possibility of having to defend multiple lawsuits in different forums. The court found that the number and amount of potential claims was not known because the project was not yet completed, and any possible delay damage claims of Ferguson and Carlisle had not yet been determined. The court further found that "[t]he stated concern of Plaintiff as an issue regarding some potential litigation in an amount in excess of its bond coverage has in no way been shown to actually exist as of the time of this proceeding, as either a matter of fact, or of law." The court ruled Continental's motion for a preliminary injunction moot and granted it 21 days to amend its pleadings.

Continental filed its amended complaint in interpleader on June 19, 1980. In it, Continental alleged claims of subcontractors and material suppliers, including those of the appellants, totaling $326,838.93. Continental further alleged that Ferguson estimated it would have a direct loss claim of approximately $116,060.12 for the completion of the Simmons' work. In addition, Continental alleged that Ferguson had indicated "a likelihood" of making delay damage claims against the bond, both directly in its own behalf and in order to "pass-through" delay damage claims Ferguson anticipated receiving from Carlisle. Continental asserted that it appeared likely that the ultimate claim for delay damage would equal or exceed the approximately $202,000 of the bond remaining after payment of the other claims. Continental also alleged that, even if the claims did not exceed the bond penalty, it had already been subjected to multiple lawsuits, and that it reasonably expected to be subjected to additional lawsuits.

On the same day, the court entered orders acknowledging the filing of the amended complaint in interpleader and directing Continental to deposit $645,400 with the clerk of the court.

Appellants, on July 1, 1980, moved to dismiss the amended complaint. They maintained that the complaint failed to state a claim that Continental was faced with double or multiple liability.

Ferguson moved on July 11, 1980, to consolidate the appellants' mechanics' lien case into the interpleader action, or stay the mechanics' lien case until the issues involved were finally determined in the interpleader action.

On July 18, 1980, Ferguson filed an answer to the amended complaint in interpleader and a counterclaim. In the answer Ferguson admitted that it had notified Continental that it might have a delay damage claim arising from Simmons' improper performance. However, Ferguson denied Continental's allegation that the ultimate claim for delay damages would be equal to or would exceed the amount of the bond remaining after pay-

ment of the other claims. Ferguson requested that the court adjudicate the rights of the parties to the funds and enter judgment for Ferguson in accordance with its counterclaim.

In its counterclaim, Ferguson prayed for judgment for $486,838.93, alleging that Continental had refused to reasonably and expeditiously investigate the claims of the subcontractors and materialmen totaling $326,838.93 as well as the claims of Ferguson against Simmons totaling $160,000. Ferguson also requested punitive damages on the theory that Continental's breaches of its duties to Ferguson were willful and wanton.

On July 18, 1980, the court heard the appellants' motion to dismiss. In opposition to the motion, Continental noted that it was being sued by the appellants in Madison County and St. Louis County, Missouri, and was also subject to a counterclaim by Ferguson in a Federal action brought by Simmons against Ferguson in Springfield, Illinois. Counsel for Continental argued that its "* * * exposure to unnecessary vexation by a multiplicity of suits * * *" was a sufficient ground to sustain the interpleader, even if the claims did not exceed the bond penalty. Counsel also suggested that if Ferguson was unwilling to stipulate that its claims would be within the bond penalty, then Continental's potential exposure to delay damage claims in excess of the bond penalty was sufficient to sustain the interpleader.

Counsel for Ferguson indicated a willingness to stipulate as requested by Continental. However, counsel stated that this was "impractical" in light of Carlisle's stated intention to seek delay damages in an undetermined amount. In any event, Ferguson took the position that the interpleader should be sustained.

The appellants contended that the interpleader should be dismissed because the claims did not exceed the bond amount. Appellants maintained that the undefined delay damage claims were too speculative to support a finding of double or multiple liability.

The court denied the motion to dismiss upon finding a potential "multiplicity of actions" and "exposure to liability by plaintiff Continental." The court thought it appropriate to construe the interpleader statute liberally in favor of sustaining the interpleader and recited the consideration of judicial economy.

The court also granted Ferguson's motion to consolidate the appellants' mechanics' lien action into the interpleader proceeding. Appellants did not oppose this motion. After a subsequent recess, the court indicated that it was also staying further proceedings in the mechanics' lien case.

Continental then suggested that Simmons, Ferguson, Continental and Carlisle stipulate to a procedure for the successive payment of the claims of the subcontractors and suppliers in full from the bond amount. Part of

the stipulation was that Ferguson would not assert a claim in excess of the amount remaining after payment of all other claims.

Counsel for the appellants objected that payment in full of some claimants could prejudice those still unpaid and that the stipulation would be inconsistent with Continental's theory in opposing the appellants' motion to dismiss. After further discussions, counsel for Continental, Simmons, Ferguson and Carlisle entered into the stipulation.

The court then approved orders for the payment of some of the uncontested claims of subcontractors and suppliers. Continental offered to stipulate to a 60% payment of the appellants' claims without prejudice to the appellants' rights to establish the propriety of the contested balance in course of the interpleader proceeding. The appellants refused.

On July 22, 1980, the appellants filed a motion to stay payment of any claims until an evidentiary hearing was held to determine whether a "preliminary decree in interpleader" should be entered and until after the relative rights of all defendants in interpleader had been determined in a second hearing. The appellants also filed an answer denying the allegations of the interpleader complaint and asserting the affirmative defense that Continental was not exposed to double or multiple liability. On July 28, 1980, appellants moved that the court reconsider and set aside its orders of July 18.

At a hearing on August 15, 1980, the court heard argument on the above motions and denied them. The court entered an order *nunc pro tunc* July 18, 1980. In it, the court recited that it had heard evidence relevant to "the first-stage of an interpleader action" on May 29 and July 18, 1980; that the amended complaint in interpleader stated a cause of action under section 26.2 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 26.2); and that the evidence demonstrated that the action in interpleader was proper under the statute.

Appellants thereafter moved for summary judgment in their mechanics' lien action, and Continental asked that the appellants be permanently enjoined from further prosecution of their Madison County suit against Continental and Simmons. Ferguson and Carlisle each moved that the appellants' motion for summary judgment in their mechanics' lien suit be stricken as contrary to the court's order of July 18 staying further proceedings in the mechanics' lien suit.

At a hearing on September 18, 1980, the parties argued the above motions. The court granted Ferguson's and Carlisle's motions to strike and stayed all proceedings relating to the imposition of mechanics' liens but not relevant to recovery on the bond. The court also found that Continental was entitled to a permanent injunction to prevent the appellants from further prosecuting their claims for actual damages in the Madison

County action against Continental and Simmons. However, the court found that the portion of the appellant's Madison County action consisting of claims against Continental for punitive damages and statutory penalties did not involve the same subject matter as the interpleader action and thus should not be enjoined.

On September 29, 1980, the court incorporated the above rulings into two written orders, from which the appellants have taken this appeal.

On appeal, briefs have been filed by the appellants, Continental, and Ferguson. The appellants and Continental have addressed the propriety of the interpleader and the relief granted in the injunction and stay orders. Ferguson has addressed only issues relating to the stay order, namely, whether the appellants have perfected their interlocutory appeal from that order, and, if so, whether the stay of mechanics' lien proceedings was proper.

The elements required for maintaining an interpleader action appear in the first sentence of section 26.2 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 26.2), as follows:

> "Persons having claims against the plaintiff arising out of the same or related subject matter may be joined as defendants and required to interplead when their claims may expose plaintiff to double or multiple liability."

The statute further provides that it is not a ground for objection to interpleader that the claims of the several claimants or the titles upon which their claims depend do not have a common origin or are not identical or are adverse to or independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all the claimants.

Noting the similarity between Illinois and Federal interpleader provisions, both the appellants and Continental have cited numerous Federal cases. The Joint Committee Comments on the Illinois statute explain its derivation from Federal Rule 22(1):

> "The new section is Federal Rule 22(1) with minor language changes and the insertion, after the sixth word in the first sentence, of the words 'arising out of the same or related subject matter.' The inserted language explicitly states a limitation that is implied in the federal rule. See Girard Trust Company v. Vance, 4 F.R.D. 255, 266 (E.D.Pa., 1945)." (Ill. Ann. Stat., ch. 110, par. 26.2, Joint Committee Comments, at 334 (Smith-Hurd 1968).)

Federal interpleader actions may be grounded on either Federal Rule 22(1) or 28 U.S.C.§1335 (1976), where the respective jurisdictional and procedural requirements are met.

The appellants contend that Continental, as a construction bond surety, is not entitled to interplead bond claimants, where the sum of the claims does not exceed the amount of the bond and the claims are not

mutually exclusive. Continental contends that interpleader requires only the existence of claims potentially in excess of the fund involved, and that here the potential for delay damage claims in excess of the difference between the bond amount and the other claims was sufficient to sustain the interpleader. Alternatively, Continental asserts that "multiple vexatious litigation," without regard to the amount of the claims, is an independent basis for interpleader.

The parties correctly observe that the existing Illinois case law interpreting the interpleader statute does not supply the answer to whether Continental was exposed to the requisite potential for "double or multiple liability." However, the Federal courts have held that where the amount of a construction surety bond exceeds the amounts claimed to be owing to all parties, the requisite "adversity" among claimants and possible resulting double liability and vexation are absent. *Fulton v. Kaiser Steel Corp.* (5th Cir. 1968), 397 F.2d 580; *Frank Briscoe Co. v. Albert Pick Co.* (D. N.J. 1968), 282 F. Supp. 321.

■■ Cumulative claims against a surety bond are not inherently adverse, unlike the type of mutually exclusive claims to a property or fund that were required to sustain the traditional bill in interpleader. Rather, cumulative claims against a bond become adverse only when their aggregate amount exceeds the bond penalty. Where this is the case, the separate payment of some claims in full would be to the detriment of the claimants still unpaid and would tend to expose the surety to the vexation of continuing litigation even after the surety had fully discharged its obligation by paying claims equal to the amount of the bond. Thus, a surety is entitled to interplead cumulative claims if it can sufficiently demonstrate that the claims exceed the bond amount and, therefore, are adverse.

Professor Moore comments as follows:

"The requisite adverse claims have similarly been found to exist in cases involving contract sureties confronted by claims of subcontractors and materialmen which, although not in theory mutually exclusive, are in the aggregate in excess of the surety's contractual liability. Interpleader is thus appropriate under the federal Miller Act, under which the statutory surety is liable to the extent of its bond to all claimants as a group, pro rata, and not in that amount to each claimant. In these cases too, interpleader should be denied if the claims of subcontractors and materialmen do not exceed the policy limits or if the 'stakeholder' is not the surety but the contract debtor himself." 3A Moore Federal Practice §22.08[1], at 22-56 (2d ed. 1979).

Continental acknowledges that its exposure to claims in excess of the bond penalty depended upon an anticipated possibility that Ferguson might claim delay damages for itself or Carlisle in excess of the amount

by which the bond penalty exceeded the total of all other claims. The stipulation of July 18 between Ferguson, Carlisle, Continental and Simmons removed any such possibility. However, Continental argues that the stipulation did not undermine the interpleader, which the court had already sustained.

Continental argues that the propriety of interpleader does not depend on whether the claims are either presently asserted or certain in liability or amount. The Illinois statute and Federal Rule 22(1) do allow interpleader where the claims "may" expose the plaintiff to double or multiple liability. In support of its argument that the claims need not be presently asserted, Continental cites a number of cases involving mutually exclusive claims to an entire property or fund. (See, *e.g., A/S Krediit Pank v. Chase Manhattan Bank* (S.D. N.Y. 1957), 155 F. Supp. 30; *Chicago Title & Trust Co. v. Czubak* (1976), 42 Ill. App. 3d 349, 356 N.E.2d 118; *Aetna Life Insurance Co. v. Strickland* (1975), 33 Ill. App. 3d 52, 337 N.E.2d 285.) In such cases the necessary adversity of the claims is evident. These cases are of little assistance in deciding the essential question here of whether the claims exceed, or potentially exceed, a certain amount. Continental also cites cases where liability insurers were allowed to interplead unliquidated tort claims totaling well in excess of the policy limits. (See, *e.g., Pan American Fire & Casualty Co. v. Revere* (E.D. La. 1960), 188 F. Supp. 474; *First Financial Insurance Co. v. Johnson* (1979), 68 Ill. App. 3d 294, 386 N.E.2d 142.) However, none of the cases cited involve the sustaining of an interpleader where cumulative claims do not exceed the amount sought to be interpleaded.

■■ Upon review of the record before us, we conclude that interpleader should have been denied. Ferguson's apparent intent in requiring that Simmons procure the bond was to insure payment of subcontractors and materialmen in full, thereby protecting against the filing of liens against the project. Ferguson had no interest in making a claim that would cause the total amount of claims to exceed the bond penalty, thereby subjecting itself as the general contractor and Carlisle as owner to mechanics' lien claims. Ferguson joined in the appellants' motion to dismiss Continental's initial complaint for declaratory judgment and took the position that Continental should have immediately begun to investigate and pay the claims of the subcontractors and materialmen. After the presentation of evidence on the amount of the prospective claims in the May 29 hearing, the court seemed to find no currently existing potential for litigation of claims in excess of the bond amount. Ferguson ultimately supported the interpleader. Yet, its answer filed on July 18 denied that any delay damage claim it might file would be in excess of the bond amount remaining after all other claims were paid. According to Continental's amended complaint in interpleader, the total amount of claims, excluding

the potential delay damage claims, was about $202,000 less than the $645,400 bond amount. Ferguson's counterclaim asserted that the claims totaled $486,838.93, or about $159,000 less than the bond amount. Under these circumstances, we do not believe that the timing of the stipulation to keep claims within the bond amount was significant, as Continental contends.

■■ It has been said that all doubts should be resolved in favor of permitting an interpleader action to lie. (*Drabik v. Lawn Manor Savings & Loan Association* (1978), 65 Ill. App. 3d 272, 382 N.E.2d 333.) The thrust of Continental's position seems to be that the statutory requirements of double or multiple liability may be satisfied by the existence of multiple claims and lawsuits. We do not believe that the statute should be so broadly construed. To do so would seem to sanction interpleader in every case where a principal defaults in its obligation to a number of claimants, who would then be effectively deprived of their ability to select their forums and actively pursue their claims in the event that payment was not forthcoming from the surety. Protection against duplicative and unnecessary litigation is often cited as a beneficial result of interpleader. However one of the risks inherent in acting as surety on a contractor's bond is that the surety may be subjected to litigation by unpaid subcontractors and materialmen in more than one forum. The rights of the claimants must also be considered. In short, we see no reason to depart from the rule that a construction surety must establish that the claims exceed the bond penalty.

■■ Because the interpleader was improper, there was no legal basis to support the permanent injunction order restraining the appellants from prosecuting their claims against the bond in their Madison County action. Ferguson has moved to dismiss the appeal from the September 29, 1980, order staying the appellants' mechanics' lien action on the theory that the appeal from that order in fact constitutes a belated attempt to appeal from the court's consolidation order of July 18, which was apparently intended to constitute a stay. However, because both the July 18 and September 29 orders were conditioned upon the propriety of the interpleader, they necessarily fail together with the interpleader.

The orders appealed from are reversed, and the cause is remanded to the Circuit Court of Bond County with directions that the amended complaint in interpleader be dismissed as to the appellants.

Reversed and remanded with directions.

JONES and HARRISON, JJ., concur.